JOHN H. GRADY ET AL. *v.* ROBERT A. SCHMITZ ET AL.
(5716)

BORDEN, DALY and NORCOTT, Js.

Argued May 12—decision released September 20, 1988

*Philip R. McKnight,* for the appellants (plaintiff Clifford C. Woods, Jr., et al.).

*Ridgely W. Brown,* with whom, on the brief, was *Heather M. Brown,* for the appellees (named defendant et al.).

BORDEN, J. The plaintiffs[1] appeal from the judgment rendered in favor of the defendants[2] on the plaintiffs' complaint seeking an injunction to enforce a restrictive covenant. The plaintiffs claim that the trial court erred in concluding that the covenant in question was not created to benefit the plaintiffs' land, and that its original purpose could no longer be accomplished. We find error.

Certain facts are not in dispute. The plaintiffs own property known as 21 Grove Lane, in Greenwich. Their property is across from the defendants' property, which is bordered by Grove Lane but is known as 111 Brook-

---

[1] The action was originally brought by the named plaintiff, John H. Grady, and by Alexandra D. Grady, Clifford C. Woods, Jr., Mary Louise Woods, Foucault Settel, John W. Lyons and Margaret Frail Lindsay. The trial court found that proof of property ownership was established regarding Clifford C. Woods, Jr., and Mary Louise Woods, only, and that the Gradys had sold their property, and the court thus confined its decision to the Woods' property. Settel, Lyons and Lindsay withdrew from the appeal. Despite the plaintiffs' claim in their brief that the Gradys remain in the appeal, they do not challenge the finding of the trial court that the Gradys sold their property. We therefore consider that the only remaining plaintiffs on this appeal are Clifford C. Woods, Jr., and Mary Louise Woods, and we refer to them herein as the plaintiffs.

[2] The only remaining defendants are Robert A. Schmitz and Marion B. Schmitz. We refer to them herein as the defendants.

side Drive because it fronts on Brookside Drive. Both parcels are part of a tract of land formerly owned by Seaman Mead, which was bounded by Brookside Drive, Glenville Road, Dearfield Drive and Grove Lane. Before 1900, Mead transferred part of his tract to R. Jay Walsh, who was the common grantor of the plaintiffs and the defendants.

In 1903, Walsh conveyed what ultimately became the defendants' property to Norman T. Reynolds. That deed contained a provision that stated, inter alia, that the "grantee . . . covenants and agrees for himself, his heirs, executors, administrators and assigns that he will not . . . subdivide said premises for the purpose of erecting more than one house thereon. These covenants and agreements shall run with the land hereby conveyed and be binding upon said grantee, his heirs, executors, administrators and assigns." In 1976, the defendants acquired their property by virtue of a deed specifically referring to the restrictions contained in the deed from Walsh to Reynolds.

In 1904, Walsh conveyed what ultimately became the plaintiffs' property to Edward P. Williams. That deed contained a provision identical to the restriction in the deed from Walsh to Reynolds contained in the defendants' chain of title. In 1966, the plaintiffs acquired their property by virtue of a deed specifically referring to the restriction contained in the deed from Walsh to Williams.

This case arose because the defendants applied to the Greenwich planning and zoning commission for permission to subdivide their property into additional building lots. The plaintiffs sued the defendants, seeking an injunction barring the defendants from violating the restrictive covenant. The trial court, *Hon. Margaret C. Driscoll,* state trial referee, rendered judgment for the defendants. There were two bases for the court's

decision. The first was that the purpose of a restrictive covenant burdening land adjacent to it is to benefit the grantor's homestead, and that the plaintiffs' property was located across the street from the homestead of Walsh, the original grantor. Thus, the court concluded that the covenant was not intended to benefit the plaintiffs' property. The second basis was that, whether or not the covenant was violated, there had been a change in the character of the area from single-family homes to multi-family dwellings. This conclusion was based on the court's finding that the plaintiffs had rented part of their home and their carriage house to tenants, in violation of a different restrictive covenant in their deed limiting the use of their property to a "strictly private residence." The court also found that, because Walsh's homestead was now a building housing dental offices, and because the homestead property had been subdivided, Walsh's original purpose of protecting his homestead had been vitiated. This appeal followed.

The plaintiffs first claim that the court erred by concluding that the intent of the restrictive covenant was to benefit Walsh's homestead. They argue that the court misread the applicable case law in reaching this conclusion, and that, viewed properly, the covenant benefits their property and is enforceable by them. We agree.

Both parties agree, as do we, that the trial court's ultimate task was to determine the intent of Walsh as the grantor of the deeds containing the restrictive covenant at issue here. Although in most contexts the issue of intent is a factual question on which our scope of review is limited; see, e.g., *Finley* v. *Aetna Life & Casualty Co.*, 5 Conn. App. 394, 408, 499 A.2d 64 (1985), rev'd on other grounds, 202 Conn. 190, 520 A.2d 208 (1987); the determination of the intent behind language in a deed, considered in the light of all the surround-

ing circumstances, presents a question of law on which our scope of review is plenary. *Kelly* v. *Ivler,* 187 Conn. 31, 39, 450 A.2d 817 (1982); *Marion Road Assn.* v. *Harlow,* 1 Conn. App. 329, 332, 472 A.2d 785 (1984).

In general, restrictive covenants fall into three classes: (1) mutual covenants in deeds exchanged by adjoining landowners; (2) uniform covenants contained in deeds executed by the owner of property who is dividing his property into building lots under a general development scheme; and (3) covenants exacted by a grantor from his grantee "presumptively or actually for the benefit and protection of his adjoining land which he retains." *Stamford* v. *Vuono,* 108 Conn. 359, 364, 143 A. 245 (1928). With respect to the third class of covenants, the original grantor, who is the owner of the property benefited, "and his assigns may enforce [the covenant] against subsequent purchasers of the property burdened. If the restrictive covenant is for the benefit of the remaining land of the grantor, it is an easement running with the land and may be enforced by a subsequent purchaser of the remaining land against the prior grantee and his successors in title . . . ." Id., 365.

The restriction in this case falls within this third class of covenants. It was exacted by Walsh from his grantee, namely, Reynolds, presumptively or actually for the benefit of the remaining, adjoining land retained by Walsh. As such, it is enforceable by the plaintiffs, who are the assigns of Walsh, the owner of the retained property benefited, against the defendants, who are the subsequent purchasers of the property burdened. We conclude, moreover, from the language in the deed from Walsh to Reynolds, and from the surrounding circumstances, that it was the intent of Walsh in exacting the covenant to benefit the adjoining land which he retained.

First, since Walsh extracted from Reynolds such a covenant, it must be viewed as "presumptively . . . for the benefit and protection of his adjoining land which he retain[ed]." Id., 364. Second, the language of the deed, namely, that the covenant "shall run with the land hereby conveyed, and be binding upon said grantee, as the heirs, executors, administrators and assigns," itself suggests a broad rather than limited scope. The fact that Walsh explicitly made the covenant run with Reynolds' land indicates that Walsh intended it to be enforceable by him as the owner of the land he retained, or by his assigns of that retained land. C.f. *Bauby* v. *Krasow*, 107 Conn. 109, 139 A. 508 (1927) (although the covenant did not explicitly run with the land, it was held by the court to do so because of the circumstances surrounding the grant). Third, the surrounding circumstances also indicate such an intent. The limitation to one house on the property is most appropriately viewed as indicating an intent to preserve the residential character and value of the land retained by Walsh. Certainly such a restriction inured to Walsh's benefit as the eventual seller of all his retained land, since it would affect the value of all that land, not just the portion comprising his homestead. Fourth, we find nothing in either the language or the circumstances of the deed to suggest a limitation on that intent to Walsh's homestead.

We agree with the plaintiffs that our case law does not support such a limitation. Although at least two of our cases have mentioned the grantor's homestead; see *Bauby* v. *Krasow*, supra, 115; *Marion Road Assn.* v. *Harlow*, supra, 335; the question of intent in both cases was determined pursuant to the broader principle that "a right to enforce a restriction of this kind will not be inferred to be personal when it can fairly be construed to be appurtenant to the land, and that it will generally be construed to have been intended for

the benefit of the land, since in most cases it could obviously have no other purpose, the benefit to the grantor being usually a benefit to him as owner of the land, and that, if the *adjoining land retained by the grantor is manifestly benefited by the restriction,* it will be presumed that it was so intended." (Emphasis added.) *Bauby* v. *Krasow,* supra, 115; *Marion Road Assn.* v. *Harlow,* supra. The other principal cases are to the same effect. See, e.g., *Harris* v. *Pease,* 135 Conn. 535, 539, 66 A.2d 590 (1949) (covenant restricting erection of buildings was "in the nature of an easement inuring to the benefit of the land [the grantor] retained"); *Stamford* v. *Vuono,* supra (covenant extracted from grantee is "presumptively or actually for the benefit and protection of [grantor's] adjoining land which he retains"); *Baker* v. *Lunde,* 96 Conn. 530, 537, 114 A. 673 (1921) (restriction intended to "benefit another tract of the grantor adjoining the land on which the restriction is imposed," constitutes a perpetual easement attached to "the adjoining tract owned by the grantor"). Although the presence of the grantor's homestead on the retained land may be an indication of an intent to benefit that land, our cases do not suggest, as the trial court reasoned, that the restrictive covenant in this case must be limited to benefit the grantor's homestead.

An alternate basis of the trial court's decision, on which the defendants rely, was its conclusion that there was a change in circumstances which justified withholding enforcement of the restrictive covenant at issue here. The findings underlying this conclusion were that there was a change in the character of the area from single-family homes to multi-family dwellings because the plaintiffs have rented part of their house and carriage house to tenants, in apparent violation of a separate covenant in their deed limiting the use of their

property to a private residence. We agree with the plaintiffs that this conclusion was erroneous.

It is difficult to see how the rental of part of residential property to residential tenants changes the residential character of that property. Furthermore, even if that rental activity were in violation of such a covenant in the plaintiffs' chain of title, that covenant is distinct from the covenant burdening the defendants' property and benefiting the plaintiffs' property in issue here; namely, a restriction against subdivision of the defendants' property for the purpose of erecting more than one house thereon. Violation by a property owner " 'of one restriction [will not] estop him to compel the observance of another restriction beneficial to his property.' " *Maganini* v. *Hodgson,* 138 Conn. 188, 195, 82 A.2d 801 (1951), quoting 3 H. Tiffany, Real Property (3d Ed.) § 873.

The defendants also claim that the judgment should be sustained on the alternate grounds of unclean hands and change of circumstances.[3] They claim that because of the plaintiffs' unclean hands and the change in circumstances in the neighborhood, the trial court was justified in withholding the equitable relief of injunction sought by the plaintiffs. We disagree.

The defendants' argument regarding the plaintiffs' unclean hands is based on evidence that the plaintiffs had rented part of their property to tenants in violation of the separate deed restriction regarding use of their property as a "strictly private residence." Their argument is disposed of by *Maganini* v. *Hodgson,* supra, 194–95, in which the court specifically rejected the

---

[3] The defendants, in this part of their brief, also mention the doctrine of laches, but do not present any facts or legal authorities in support of that doctrine. We therefore do not consider it. See *Bowman* v. *1477 Central Avenue Apartments, Inc.,* 203 Conn. 246, 249–50 n.3, 524 A.2d 610 (1987).

application of the clean hands doctrine to bar enforcement of one covenant because of a violation by the plaintiff of another.

The defendants' argument regarding change of circumstances is based on certain evidence they produced, and on certain findings by the trial court. This evidence and these findings are as follows. The properties of the plaintiffs and the defendants are located one-quarter to one-half mile north of Post Road in Greenwich. Certain property owned by C. Burton Cormier and Lucy T. Cormier, original defendants to this action, which was then sold to another original defendant, Tom S. Ward, trustee, has been subdivided into two lots containing two houses. One of these houses was built in 1910, and the second was described in testimony by the defendant, Robert A. Schmitz, Jr., as "new." This property is on the north side of Grove Lane, at its intersection with Dearfield Drive. Two of the original plaintiffs, John H. Grady and Alexandra D. Grady; see footnote 2, supra; converted a garage on their property into a dwelling which they have rented for at least ten years. The defendants also point to the evidence that the plaintiffs have had tenants in their main and carriage houses, and that property of another original plaintiff, John W. Lyons, contained a garage apartment that was rented. In addition, on Dearfield Lane, located immediately to the south of the defendants' property, some houses were converted into professional offices, and there are two three-story medical buildings. Furthermore, the trial court found that Walsh's original homestead had become a building containing dental offices, and that the homestead property had been subdivided.

The plaintiffs, relying on *Fidelity Title & Trust Co.* v. *Lomas & Nettleton Co.,* 125 Conn. 373, 376–77, 5 A.2d 700 (1939), argue that in order to justify withholding injunctive relief to enforce a restrictive covenant, there must have " 'been a radical change in the

conditions existing when the restrictive covenants were created which completely defeats the objects and purposes of the covenants so that they are no longer effective, and their enforcement would not afford the protection which was in contemplation of the parties . . . . ' " Id., 376, quoting *Bickell* v. *Moraio,* 117 Conn. 176, 181, 167 A. 722 (1933). We disagree with the plaintiffs that this stringent standard applies to the present case, but we agree that, gauging the evidence by the proper standard, injunctive relief should have issued.

In *Fidelity Title & Trust Co.* v. *Lomas & Nettleton Co.,* supra, the plaintiffs did not seek to enforce a restrictive covenant by way of an injunction against its breach; they sought instead a judgment modifying the covenant in perpetuity. The court drew a clear distinction between the two remedies. "In an action for removal or relaxation of restrictions the issues are not the same as in one seeking to enforce them by enjoining breach thereof, and the judgment is more drastic. Injunction may be denied because of conditions existing at the time, while as to a judgment which affects the covenants for all time it is to be considered that it is quite possible that another change may occur subsequently which would remove or materially affect the ground upon which the judgment was based." Id., 376. It is only where a party seeks by way of affirmative relief to have a restrictive covenant modified or nullified on the basis of a change of circumstance that he must make it manifest that its purpose has been permanently frustrated, and that the change is so great as to defeat the object of the covenant. Id., 377. The present case is not an action to modify or nullify the covenant; it is an action to enforce it.

The standard applicable to the defendants' claim of change in circumstances, therefore, is that "[w]hen presented with a violation of a restrictive covenant, the court is obligated to enforce the covenant unless the

defendant can show that enforcement would be inequitable." *Gino's Pizza of East Hartford, Inc.* v. *Kaplan*, 193 Conn. 135, 139, 475 A.2d 305 (1984); *Hartford Electric Light Co.* v. *Levitz*, 173 Conn. 15, 22, 376 A.2d 381 (1977). Change in circumstances, such as use of the benefited property for purposes other than those contemplated by the original covenant, may justify the withholding of equitable relief to enforce a covenant. *Harris* v. *Pease*, supra, 541. Such a change in circumstances is decided on a case by case basis, and the test is whether the circumstances show an abandonment of the original restriction making enforcement inequitable because of the altered condition of the property involved. *Armstrong* v. *Leverone*, 105 Conn. 464, 474, 136 A. 71 (1927). The fact that the burdened property would be of more value if the restriction were not enforced "is of no consequence." *Harris* v. *Pease*, supra.

Applying these principles to this case, we conclude that the evidence and findings relied on by the defendants are legally insufficient to justify withholding injunctive relief. Much of the evidence concerns rental of various properties, rather than the covenant at issue here, namely, a restriction on subdivision for the purpose of building more than one house. Although the original Walsh homestead property and the Cormier-Ward lot have been subdivided, the other parcels in the area transferred by Walsh subject to the convenant have not been subdivided and remain essentially the same size as they were originally. Thus, much of the benefited property is still being used for the purpose contemplated by the original covenant, and it cannot reasonably be said that the circumstances show an abandonment of the original plan sufficient to make enforcement of the covenant inequitable. At best, withholding of enforcement of the covenant would make

the defendants' property more valuable, but that is insufficient to justify withholding equitable relief. *Harris* v. *Pease,* supra.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiffs.

In this opinion the other judges concurred.