[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: INJUNCTIVE RELIEF
Plaintiffs, Ronald and Ruth Riccio ("Riccios"), CT Page 676 purchased property located at 43 Hickory Lane in Fairfield from Charles and Carole Pieper ("Piepers"). The warranty deed conveying the premises contained the following provision:
 ALL THAT CERTAIN piece or parcel of land with the buildings and improvements thereon . . . together with all rights and benefits pursuant to an agreement dated February 2, 1988 between Charles P. Pieper and Carole J. Pieper and William P. Fortune and Joel J. Fitzgerald and recorded in the Fairfield Land Records. (Emphasis supplied.)
The Piepers conveyed .07 acres under the February 2, 1988 agreement to the Grantees, Fortune and Fitzgerald. The agreement stated that the grantees "Need[ed] additional land to increase the size of their property to at least 4 acres . . . to divide their land into two, 2 acre building lots. . . ." The parties to the February, 1988 conveyance agreed as follows:
 6. The Grantors [the Piepers] shall have the right to approve any and all plans and specifications for the construction of any buildings or other improvements to or upon the Grantees [Fortune and Fitzgerald] property together with the location of any such improvements. The approvals referred to in this paragraph 6 shall not be unreasonably withheld by the Grantors.
 7. This agreement shall run with the land comprising the premises, shall bind the Grantors and the Grantees and their respective heirs, successors, and assigns, and shall be incorporated in any deed of conveyance affecting the Premises and the adjoining land on the north of the Premises as set forth in Schedule A and on the south of the Premises as set forth in Schedule B.
Defendants, Carolyn and George Geignetter ["Geignetters"], acquired the parcel adjacent to the Riccios. They have submitted construction plans to the Riccios for approval, but the Riccios have withheld approval primarily because of the size of the proposed house. Ronald Riccio testified that the size would not be a problem if the house were turned to face in another direction. The Geignetters have refused to modify the proposed size or location of the house. CT Page 677
The Riccios brought the instant action seeking to enjoin the Geignetters from constructing the proposed house. The matter was fully heard by the court, briefed by the parties, and presents the following questions:
1. Did the covenant the Riccios seek to enforce run with the land and thus bind the Geignetters?
2. Even if the covenant ran with the land, is it enforceable?
3. If the covenant is held to be enforceable, did the Riccios unreasonably withhold approval?
The court answers each question in the affirmative and must, therefore, deny the plaintiffs' application for injunctive relief.
1. THE COVENANT RUNS WITH THE LAND
Defendants agree (page 1, Trial Brief) that there are four essentials for a covenant to run with the land. They are set out in 21 CJS, Covenants, 54, p. 923 as follows:
The covenant must be in writing.
 2. The covenantor and covenantee must have intended that the covenant run with the land. 3. There must be privity of estate.
 4. The covenant must touch and concern the land with which it runs.
The first two essentials are established. The covenant is in writing and paragraph seven, supra, states that the agreement ". . .shall run with the land . . . shall bind the grantors and the grantees and their respective heirs, successors, and assigns and shall be incorporated in any deed of conveyance affecting the premises. . . ." The attendant circumstances bolster the expressed written intent of the parties. The Grantor was conveying enough property so that the grantee could create a building lot. In part consideration, therefore, the grantor wanted some control over what would be built.
With respect to privity of estate, defendants make two claims. First, they claim that privity requires the transfer of an interest in the land to be burdened by the covenant and the subject (allegedly burdened) property was not part of the CT Page 678 transfer. Secondly, they claim that the "premises" referred to is the .07 acres transferred and there would be privity only as to that small strip of land.
Defendants cite Carlson v. Libby, 137 Conn. 362, 368
(1950) in support of their first claim. That case, in fact, helps to dispatch the claim. The applicable quote from page 368 is:
 The burden of a covenant will run with land only when the transaction of which the covenant is a part includes a transfer of an interest in land which is either benefited or burdened thereby. . . (Emphasis supplied.)
The use of the disjunctive "or" means that a covenant can run with land where there has been a transfer of an interest which is burdened or benefited by the covenant. Grady v. Schmitz, 16 Conn. App. 292, 296 (1988) is instructive as to what land must be benefited.
 In general, restrictive covenants fall into three classes: (1) mutual covenants in deeds exchanged by adjoining landowners; (2) uniform covenants contained in deeds executed by the owner of property who is dividing his property into building lots under a general development scheme; and (3) covenants exacted by a grantor from his grantee "presumptively or actually for the benefit and protection of his adjoining land which he retains." Stamford v. Vuono, 108 Conn. 359, 364, 143 A.2d 245 (1928). With respect to the third class of covenants, the original grantor, who is the owner of the property benefited, "and his assigns may enforce [the covenant] against subsequent purchasers of the property burdened. If the restrictive covenant is for the benefit of the remaining land of the grantor, it is an easement running with the land and may be enforced by a subsequent purchaser of the remaining land against the prior grantee and his successors in title. . . ." Id., 365. (Emphasis supplied.)
The covenant in the instant case falls into category three from Grady, supra. The original grantor wanted to benefit the land he retained, which land is now owned by plaintiffs. Grady also disposes of defendants' second claim that the CT Page 679 "premises" means only the small strip conveyed. In addition, the agreement itself (plaintiff's exhibit D) states in paragraph 7 that it runs with the land and shall be incorporated in any deed affecting the premises and the adjoining land. The adjoining land is legally described as the land of the grantor, now owned by the Riccios, and the land of the grantees, now owned by the Geignetters. The original covenanting parties clearly intended to burden the subject property and benefit the Riccio's property. There is privity of estate.
The final requirement is that the covenant touch and concern the land with which it runs.
 Carlson v. Libby, supra, states at page 367: Whether a promise with respect to the use of land is a covenant real as distinguished from a personal covenant depends upon intent of the parties to the promises, to be determined in the light of the attendant circumstances. If it touches the land involved to the extent that it materially affects the value of that land, it is generally to be interpreted as a covenant which runs with the land. (Citations omitted.)
Whether construction plans for a building lot are approved or disapproved can certainly affect the value of the land. The power to disapprove (and thereby affect value) resides in the Riccios and, therefore, the covenant touches and concerns the land.
The court concludes that the covenant here meets al of the requirements of a covenant which runs with the land.
II THE COVENANT IS ENFORCEABLE
Defendants claim that the covenant is unenforceable because it is vague, overbroad and insufficiently specific.
The covenant, set out above, is clear. Defendants' basic claim is that there are no standards governing the approval or disapproval required under the covenant thereby making it overly broad and not specific enough.
Lampson Lumber Co. v. Caporale, 140 Conn. 679, 683
(1954), states that "The test of the validity of the covenant is the reasonableness of the restraint imposed." The covenant is valid if the decision to disapprove is "reasonably arrived at." Levin v. Mountain Farms, Inc., 22 Conn. Sup. 14, 19-20 (1959). CT Page 680
Defendants rely on cases from other jurisdictions in support of their claims of overbreadth, vagueness and lack of specificity. See Edgemoor Terrace Civic Association v. Spinning Wheel Inn, Inc., 256 A.2d 284, 287 (Del.Ch.ancery 1969) and Kline v. Colbert, 91 N.E.2d 299 (Ohio 1949). In these cases there were no standards governing the approach required by the covenant. Under those covenants, the purchaser was "subject to the mere whim of the seller. . . ." Kline, Id. at 303.
The covenant here is not without standards because it states that "The approvals referred to in this Paragraph 6 shall not be unreasonably withheld by the Grantors." Plaintiffs here do not have unfettered discretion, but must act reasonably. The covenant is enforceable, and the question becomes whether the refusal to approve was unreasonable.
III. PLAINTIFF'S REFUSAL TO APPROVE IS UNREASONABLE
In Levin v. Mountain Farms, Inc., supra, the court held that the refusal to approve a subdivision, under a covenant requiring such approval, was arbitrary and unreasonable. The dwellings were not detrimental to the neighborhood and complied with all zoning requirements.
Many cases have construed language requiring lessor's approval for a sublease where approval was not to be unreasonably withheld. The standard is that of an objective, reasonable person, not personal taste or convenience. See 54 A.L.R.3d, Lessor's Consent to Subletting, 6, p. 689-91. The clause here is analogous to such clauses and is governed by the same objective, reasonable person standard.
Based on all of the evidence, the court finds that plaintiffs unreasonably withheld their approval of defendants' construction and siting plans. The evidence showed that defendants' propose a 7,500 — 8,500 square foot home. Homes of up to 17,000 square feet are allowed in this area according to Ronald Riccio's testimony. Defendants' architect testified that homes of up to 26,000 square feet are allowed in this zone. The proposed structure is clearly considerably smaller than what is allowed. Plaintiffs' size objection is a matter personal to them as they have a 4,500 square foot house and feel that the proposed structure would overwhelm them.
Plaintiffs' own evidence was that even the "massive" nature of the home would not be a problem if it faced another direction. The evidence proved that the address of the proposed home is Congress Street; therefore, the proposed structure should face Congress Street. CT Page 681
On all of the evidence, the court finds, that the proposed house is in keeping with the character of the neighborhood. The property is located in the Greenfield Hill section of Fairfield where there are other large, expensive homes.
For all the foregoing reasons, the application for injunctive relief is denied.
E. EUGENE SPEAR, JUDGE.