SHIPPAN POINT ASSOCIATION, INC., ET AL. *v.*
CHARLES MCMANUS ET AL.
(12338)

O'CONNELL, FOTI, LAVERY, HEIMAN, FREEDMAN, SCHALLER and SPEAR, Js.

Argued January 5—decision released April 26, 1994

*Robert W. Green,* for the appellants (plaintiffs).
*Leo Gold,* for the appellees (defendants).

O'CONNELL, J. The plaintiffs[1] appeal from the denial of their request for an injunction in their action to enforce a covenant prohibiting the construction of more than one dwelling on the defendants' property.[2] The defendants pleaded special defenses of changed circumstances, the statute of limitations, laches and comparative hardship. The plaintiffs claim that the trial court improperly (1) concluded that the history of their property did not establish a basis for an injunction and (2) refused to enforce a restrictive covenant under the retained land theory. We affirm the judgment of the trial court.

The case was referred to an attorney trial referee who found facts on which he concluded that each of the special defenses had been established. The trial court did not challenge any of the facts found by the referee but held that the law pertaining to those facts required conclusions opposite to those drawn by the referee. Its opinion notwithstanding, the trial court then proceeded to reach the same eventual result as the referee (i.e.,

---

[1] The plaintiffs are Shippan Point Association, Inc., a Connecticut non-stock corporation composed of property owners and residents of Shippan Point in Stamford, and Verna Green and Robert Green, property owners at Shippan Point. The Greens are also members of the Shippan Point Association, Inc. Two other plaintiffs, Allen Silverman and Eleanora Silverman, were dropped from the litigation for failure to appear for trial.

[2] The defendants are the owners of property at Shippan Point.

that an injunction should not issue) but did so on the ground that the retained land theory did not apply to nonadjacent parcels. This appeal followed. The defendants filed a "cross appeal" claiming that the trial court improperly failed to rule that they should have prevailed on one or more of their special defenses.[3]

The properties that are the subject of this action are located in the Shippan Point area of Stamford. The plaintiffs' and the defendants' parcels were both originally part of approximately twenty-five lots formed in 1909 by a dredging and landfill operation conducted by the owners, Shippan Point Land Company (SPLC). After building private roads on this newly created property, SPLC began transferring title to individual lots in 1911. All of the deeds were substantially similar and contained restrictive convenants limiting each parcel to "a dwelling house arranged for and occupied by a single family." The defendants' property was originally conveyed by SPLC to Ella W. Bohannon in 1912. The Bohannon lot was combined in 1913 with an adjacent lot and a thirty foot strip of land not suitable for a building. The adjacent lot had been previously conveyed by SPLC to Homer S. Cummings. In 1914, these three unimproved parcels totaling three acres were sold as a single lot to Emilie Stein, who erected a house on the former Bohannon lot around 1915. Numerous mesne conveyances of the Stein property took place between 1946 and 1979 and each made the premises subject to the restrictions in the deeds to Cummings, Bohannon and Stein.

In 1981, the planning board of the city of Stamford approved an application to subdivide the single tract

---

[3] Technically, this was not a cross appeal, but an argument setting forth alternate grounds for affirmance of the trial court's decision and we will treat it as such. See Practice Book §§ 4013 (a) (1) and 4005.

created by Stein.[4] On July 1, 1991, Spring Realty Corporation, as successor in title to Stein, conveyed the northernmost lot of the subdivision to the defendants by a deed containing the restrictive convenants recited above. Title to the two remaining lots, both of which now contain single-family houses, were also conveyed to their respective owners in 1991. The defendants intend to build a single-family dwelling on their lot either by destroying the existing structure on the property[5] or by seeking a variance permitting the building of another house on the rear of the lot. The plaintiffs seek to prevent the defendants from building their house on the lot because they claim the deed restriction permits the presence of only two houses on what was originally two lots. The plaintiffs' property is not adjacent to the defendants' property but is part of the land originally retained by SPLC during its original conveyances.

In *Contegni* v. *Payne,* 18 Conn. App. 47, 557 A.2d 122, cert. denied, 211 Conn. 806, 559 A.2d 1140 (1989), this court considered the same area of Shippan Point and the same restrictive covenant that is at issue in this case.[6] *Contegni* recognized three classes of restrictive covenants: "(1) mutual covenants in deeds exchanged by adjoining landowners; (2) uniform covenants contained in deeds executed by the owner of property who is dividing his property into building lots under a general development scheme; and

---

[4] The Stamford planning board's approval of a four lot subdivision of the property was followed by an appeal brought by several adjacent and nearby property owners. During this appeal, the property in question was sold to Faye Dunaway who agreed to reduce the subdivision from four to three lots in exchange for the withdrawal of the appeal.

[5] The existing structure on the defendants' property is an outbuilding, which was constructed in conjunction with the single-family house built on the Stein property in 1915.

[6] The plaintiffs in this case were also plaintiffs in *Contegni* v. *Payne,* supra, 18 Conn. App. 47.

(3) covenants exacted by a grantor from his grantee presumptively or actually for the benefit and protection of his adjoining land which he retains." Id., 51.

The *Contegni* court held that the covenant could not be enforced under the uniform plan of development theory because the evidence did not sufficiently establish the boundaries of the area that was claimed to be affected by the plan of development. Id., 61. In the present case, the parties accepted *Contegni* as ruling out enforcement of the restrictive covenants under the uniform plan of development theory. The plaintiffs rely instead on the third class of restrictions, i.e., those imposed by the grantee for the benefit of adjoining land that the grantor retained. The *Contegni* court enforced the covenant in that case under this theory, which is commonly referred to as the retained land theory.

The defendants argue that the retained land theory does not apply when the retained and granted parcels are not adjacent, which is the situation here. The parcels in *Contegni* were adjacent. In the present case, the trial court declined to enforce the covenant because it felt that *Contegni* required that the two parcels be adjacent as a condition precedent to employing the retained land theory.

We do not reach the "adjacent land" issue, however, because we conclude that enforcement is barred by one of the special defenses. The defendants affirmatively pleaded that the restriction sought to be enforced was no longer effective due to changed circumstances. The attorney trial referee found that twelve of the twenty-five original lots had been implicated either in subdivision or in having more than two residential buildings appearing on individual lots. On the basis of these findings, the referee concluded that there had been a substantial change in circumstances. The trial court rejected the referee's conclusions and limited its con-

sideration to changes that had taken place after the *Contegni* decision in 1988. The defendants argue that the trial court improperly limited its analysis to only those changes occurring in the area subsequent to *Contegni*.

"Where legal conclusions are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts found by the referee." *Bernard* v. *Gershman,* 18 Conn. App. 652, 656, 559 A.2d 1171 (1989); Practice Book § 4061. Here, we do not agree with the trial court's legal conclusion that analysis of the defendants' special defense of changed circumstances was limited to changes in the area occurring after the *Contegni* decision. In fact, our decision in *Contegni* instructs otherwise.

In its analysis of whether SPLC intended to create a uniform plan of development, the *Contegni* court looked to four factors. *Contegni* v. *Payne,* supra, 18 Conn. App. 54–55. One factor was whether the actual development of the claimed tract occurred in accordance with a uniform plan. In holding that the actual development of the area reflected an intent to establish a uniform plan, the court rejected the defendants' attempt to show changes in the character of the neighborhood that had taken place long after the original conveyances. In a passage foreshadowing this case, the court stated that "[e]vents too distantly removed in time from the original SPLC conveyances to reflect SPLC's intent one way or another are not relevant to [the issue of establishing a uniform plan], *although they would bear on the equitable issue of enforceability of the covenants due to changed circumstances.*" (Emphasis added.) Id., 55. Accordingly, we hold that any changes in the character of the Shippan Point area occurring subsequent to the original conveyances, and not just those since the *Contegni* decision, are relevant in determining changed circumstances.

We note that the trial court did not dispute any of the attorney trial referee's factual findings regarding changed circumstances. The trial court's reversal of the referee's recommendation was the inevitable result of its conclusion that only those changes in the area since the *Contegni* decision were relevant. Because we conclude that the trial court improperly limited the scope of its analysis to post-*Contegni* changes, we must determine whether the factual basis of the trial referee's decision to deny injunctive relief—changed circumstances—was supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts were clearly erroneous. *Bowman* v. *1477 Central Avenue Apartments, Inc.*, 203 Conn. 246, 257, 524 A.2d 610 (1987); *Fortier* v. *Newington Group, Inc.*, 30 Conn. App. 505, 509, 620 A.2d 1321, cert. denied, 225 Conn. 922, 625 A.2d 823 (1993). In doing so, we recognize that "[w]here evidence is in conflict, its probative force is for the trier of fact to determine." *Bernard* v. *Gershman*, supra, 18 Conn. App. 656.

"The standard applicable to the defendants' claim of change in circumstances . . . is that [w]hen presented with a violation of a restrictive covenant, the court is obligated to enforce the covenant unless the defendant can show that enforcement would be inequitable. . . . Change in circumstances, such as use of the benefited property for purposes other than those contemplated by the original covenant, may justify the withholding of equitable relief to enforce a covenant. . . . Such a change in circumstances is decided on a case by case basis, and the test is whether the circumstances show an abandonment of the original restriction making enforcement inequitable because of the altered condition of the property involved." (Citations omitted; internal quotation marks omitted.) *Grady* v. *Schmitz*, 16 Conn. App. 292, 301–302, 547 A.2d 563, cert. denied, 209 Conn. 822, 551 A.2d 755 (1988).

Our review of the record discloses that the trial referee's factual findings were supported by the evidence and were correct in law. In its report, the trial referee found that several lots within the original twenty-five lot area have been subdivided and now contain, in violation of the covenant, two houses. Moreover, the trial referee found that many of the properties in the area have carriage houses that have been rented out to tenants in violation of the restrictive covenant. On the basis of these findings, which are supported by the evidence, we conclude that because of substantial change in conditions the intent of the original covenant has now been completely frustrated and it would be inequitable to enforce it.

We reach our result for reasons different from those set forth by the trial court, but the practical effect is to affirm the trial court's judgment.

The judgment is affirmed.

In this opinion the other judges concurred.