[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE:MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY NO 120)
The plaintiffs, Norman and Barbara DeTullio, and True Vine of Holiness, filed an amended two-count complaint against Chebrah Bikur Cholim, a/k/a Congregation Bikur Cholim (the defendant), on June 9, 1997, alleging that the DeTullios purchased improved real property located at 1541 Iranistan Avenue, a/k/a 1545 Iranistan Avenue, from the defendant and the deed contained a restrictive covenant prohibiting the premises from being used as a house of worship.[1] The DeTullios allege that the restrictive covenant is illegal, invalid, contrary to public policy and curtails the alienability of the premises, which was constructed as a house of worship and for which there is no effective real estate market except to religious organizations. The DeTullios seek a judgment determining the validity of the restrictive covenant "in order to clear up doubts and disputes and to quiet and settle title to the property."[2]
On August 19, 1997, the DeTullios filed a motion for summary judgment, arguing that there is no disputed issue of material fact. The defendant responded on August 22, 1997 with a memorandum of law in opposition to the motion for summary judgment, arguing that there are at least three genuine issues of material fact presented. The matter was argued before the court on September 2, 1997.
"Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Doty v.Mucci, 238 Conn. 800, 805, 679 A.2d 945 (1996). "In deciding a motion for summary judgment, the trial court must view the CT Page 10087 evidence in the light most favorable to the nonmoving party. . . ." (Internal quotation marks omitted.) Id. "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book § 381." (Internal quotation marks omitted.) Id., 805-06.
The DeTullios argue that the restrictive covenant is invalid because it prohibits indefinitely any religious use of the property. The DeTullios argue that there is no indication of any benefit to land retained by the defendant in the area, that the restrictive covenant is not part of a general development plan; and that it is not the result of a covenant between adjoining land owners. In the absence of these three circumstances, the DeTullios argue that the common law of Connecticut does not recognize the right to create restrictive covenants. Further, they argue that the restrictive covenant is unreasonable because it is not limited in operation to time and place, and it promotes no public purpose.
The DeTullios next argue that the restrictive covenant is contrary to the public policy of the state of Connecticut, as it precludes the use of the property for any religious purpose. In support of this argument, they rely on the following constitutional provisions: first amendment to the United States constitution; article first § 3 of the constitution of Connecticut; article first § 27 of the constitution of Connecticut; article seventh of the constitution of Connecticut. They also rely on the Connecticut Human Rights and Opportunities Act, under which a church is a place of public accommodation, and the Connecticut Freedom of Religion Restoration Act. The DeTullios argue that these constitutional and statutory provisions reflect a strong public policy against any prohibition of use based on religion. The DeTullios argue that the necessary governmental involvement consists of the recorded restriction on the land records and the defendant's threat to commence legal action in court to enforce the deed restriction. As an agreement in violation of public policy, the DeTullios argue that the restrictive covenant should not be enforced by the court.
The defendant argues that the DeTullios have admitted that they were aware of the restrictive covenant at the time of the CT Page 10088 conveyance of the property and that they voluntarily accepted title subject to the restrictive covenant. The defendant argues that the DeTullios dispute the allegation in the special defense that the defendant would not have conveyed the property to them without the restrictive covenant in the deed and that they waived the right to contest the validity of the restrictive covenant. The defendant also argues that the DeTullios were unconcerned with the restrictive covenant when they purchased the property, and therefore there is a material issue of fact in dispute as to whether the DeTullios waived their rights with respect to the enforceability of the restrictive covenant.
The defendant further argues that the property was purchased and renovated by the DeTullios for the purposes of commercial use, and that it is situated in an area where other commercial businesses are in operations. The defendant argues that the property now lies in a zone in which it is not currently lawful to operate a church on the premises. The defendant argues that this leads to the conclusion that it is reasonable for a finder of fact to conclude that the property is still marketable as a commercial property, and that there is a disputed issue of fact as to whether there exists a real estate market for the property other than as a church, and therefore whether the alienability of the property has been impermissibly curtailed.
"Restrictive covenants, being in derogation of the common-law right to use land for all lawful purposes that go with title and possession, are not to be extended by implication." Katsoff v.Lucertini, 141 Conn. 74, 78, 103 A.2d 812 (1954). "In general,
restrictive covenants fall into three classes: (1) mutual covenants in deeds exchanged by adjoining landowners; (2) uniform covenants contained in deeds executed by the owner of property who is dividing his property into building lots under a general development scheme; and (3) covenants exacted by a grantor from his grantee presumptively or actually for the benefit and protection of his adjoining land which he retains." (Emphasis added; internal quotation marks omitted.) Grady v. Schmitz,16 Conn. App. 292, 296, 547 A.2d 563, cert. denied, 209 Conn. 822,551 A.2d 755 (1988), on appeal after remand, 21 Conn. App. 111,572 A.2d 71 (1990). See also Shippan Point Assn., Inc. v.McManus, 34 Conn. App. 209, 212, 640 A.2d 1014, cert. denied,229 Conn. 923, 642 A.2d 1215 (1994) (three classes of restrictive covenants recognized).
It is obvious that none of the circumstances which generally CT Page 10089 lead to the recognition of a restrictive covenant listed above are present here. The DeTullios have attested that the defendant did not and does not own any land adjoining 1541 a/k/a 1545 Iranistan Avenue, that the DeTullios did not and do not own any property adjoining 1541 a/k/a 1545 Iranistan Avenue, and that the restrictive covenant was not a part of any general scheme of real estate development. The defendant does not offer any evidence to refute that offered by the DeTullios. It is clear, however, that the case law does not stand for the proposition that restrictive covenants will be recognized in only three situations. Therefore, the fact that the circumstances surrounding the restrictive covenant here do not fit the three circumstances described above does not conclude the court's inquiry as to whether the restrictive covenant is enforceable.
"[W]here a restriction is confined within reasonable bounds, and the party in whose favor it is made has an interest in the subject matter of the restriction . . . it will be sustained."Harris v. Pease, 16 Conn. Sup. 13, 16, ___ A.2d ___ (1948). "The question . . . [of] whether the covenant was reasonable when made . . . is a question of fact to be determined in light of all the circumstances surrounding the parties when the conveyance from [the defendant] to [the DeTullios] was made in [1988]." Id.
The DeTullios attest that they purchased the property in 1988 from the defendant with knowledge of the restrictive covenant preventing the premises from being used for religious purposes. The DeTullios attest that the premises were purchased to be used in a commercial enterprise, and beginning in 1993, they attempted to sell the property, with five purchase offers having been received and eleven serious inquiries having been made, all by churches. The DeTullios attest that no offer has ever been made for a non-religious use, and there is no present market value for the property except as a church. The DeTullio's realtor, John Olson, attests that despite a reduction in the asking price, no offers have been forthcoming from any interested parties besides religious groups. He further represents that despite aggressive commercial marketing, no nonreligious interest has been shown in the property and that the commercial decline of the area surrounding the property has caused a decline in the value of the property and "disestablishment" of many businesses and commercial uses.
Alexander Breiner, president of the defendant, attests that when the defendant offered the property for sale in 1986, it CT Page 10090 expressly instructed its realtor to inform prospective purchasers that the property would not be sold to become another house of worship. Breiner states that the DeTullios were aware of this restriction and voluntarily accepted it, as reflected in their reply to the special defense and their affidavits. Breiner states that the DeTullios set out to renovate and use the property for commercial purposes, that such a commercial use was not distinct to the use of other neighboring properties, and that the property is no longer zoned for use as a church under the Bridgeport zoning regulations.
The question of whether the restrictive covenant in the present case is reasonable constitutes a disputed issue of material fact. The DeTullios attest that the uncertainty as to the validity or enforceability of the restrictive covenant precludes any reasonable use of the property. The defendant has offered contradictory evidence on this point. In addition, there is no evidence from either party concerning whether the restrictive covenant is reasonable as to its temporal bounds, or whether the defendant has retained any interest in the subject matter of the restriction. Furthermore, there is no evidence submitted by the parties on the issue of whether the inclusion of the restriction in the deed in 1988 was reasonable. Therefore, a material issue of fact remains in dispute concerning whether the restrictive covenant is reasonable under the circumstances. As a result, the court need not reach the constitutional issues raised by the DeTullios. "Constitutional issues need not be considered unless absolutely necessary to the decision of a case." State v.Perruccio, 192 Conn. 154, 166 n. 6, 471 A.2d 632 (1984), cert. dismissed, 496 U.S. 801, 105 S.Ct. 55, 83 L.Ed.2d 6 (1989).
In accord with the foregoing, the plaintiffs' motion for summary judgment is denied because genuine issues of material fact remain in dispute.
WEST, J.