[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs are the owners of Lot #12 of a tract of land herein after referred to as Locke Land Estates located in the Town of CT Page 6099 Southbury, Connecticut. Lot #12 is subject to the following restriction: "Only one one family dwelling house shall be erected on said lot, together with any private garage and any other building incidental to the use of the premises as residential."
Said restriction was originally placed on Lot #12 by virtue of a warranty deed from Donald H. Locke and Rosalie E. Locke to Bruce M. Rhodes, Monroe K. Rhodes and Cecille E. Rhodes dated and recorded June 4, 1981 in Volume 156, Page 858 of the Southbury Land Records.
The plaintiffs have commenced this action seeking a declaratory judgment that the restrictive covenant which is contained in the warranty deed is non-binding and unenforceable and a judgment declaring said restriction null and void as to Lot #12.
This action for declaratory judgment was tried to the court. Having heard the evidence and testimony, the court makes the following findings of fact.
On October 17, 1980, property owners Donald Locke and Rosalie Locke obtained permission to subdivide their property into 12 lots as set forth on a map recorded in the office of the Southbury Town Clerk as Map 1898. (Plaintiff's Exhibit B).
On June 1, 1981, Donald H. Locke and Rosalie Locke sold Lot #12, which consists of 7.024 acres, as shown on said map, to Bruce M. Rhodes, Monroe K. Rhodes and Cecille E. Rhodes.
The deed from the Lockes to the Rhodes contained various restrictions including the restrictive covenant mentioned herein above, which provided that only one one-family dwelling house shall be erected on said lot.
From June 1, 1981 to September 20, 1985, the Lockes sold the remaining lots in their tract of land to various purchasers. With the exception of Lot #5, the deeds for the lots sold contained the identical restrictions as the deed for Lot #12, including the restriction against the erection of more than one one-family dwelling house on each lot (herein after referred to as "the restriction").
Lot #5 was the "homestead" of the Lockes. It already had a house built on it at the time of the subdivision by the Lockes and it was the last lot sold.
The plaintiff's purchased Lot #12 on April 10, 1987 from the Rhodes' successor in title Warren J. Null and Robert D. Conley, d/b/a Cadillac Builders. The deed contained the restriction. CT Page 6100
In 1997, the plaintiffs dedicated a portion of Lot #12 to extend a public street, Rickenback Road, to provide access a much larger (approximately 73 acres) subdivision, Alexandra Estates II. Rickenback Road was re-named South Georges Hill Road. Lot #12 was then combined with lands included in Alexandra Estates II and was re-subdivided into Lot #5 and Lot #6 of Alexandra Estates II.
Lot #5, Alexandra Estates II has been sold and there is a one family house thereon. Lot #6, Alexandra Estates II is owned by the plaintiffs and there has been no construction on Lot #6.
The defendants are individuals who purchased lots out of the Locke subdivision. The deeds to each of their properties contain the restrictions mentioned herein above including the restriction that only one one-family dwelling can be built on each of said parcels.
The defendants argue that the restriction is common to all the lots subdivided by the Lockes, with the exception of the parcel which they retained as their homestead, and that the plaintiffs must be enjoined from building more than one one-family dwelling on the parcel of land that was formerly known as Lot #12. From their perspective, the plaintiffs have conglomerated Lot #12 with land contiguous to the Locke tract, subdivided Lot #12 into Lot #5 and Lot #6 of the contiguous development and are now seeking to build a second one-family dwelling on land situated on what was a part of the original Lot #12 in violation of the covenant that their lots are subject to.
The foregoing facts having been found, the court makes the following conclusions of law
Whether or not the restrictive covenant is binding on the plaintiffs as claimed by the defendants is a matter of interpretation by the court. The intent of the parties as well as the express terms of the deeds is critical in the court's determination of the issues before it.
The court must first determine what type of restrictive covenant is on the properties in this case. In general, there are three classes of restrictive covenants: "(1) mutual covenants in deeds exchanged by adjoining landowners; (2) uniform covenants contained in deeds executed by the owner of property who is dividing his property into building lots under a general development scheme; and (3) covenants exacted by a grantor from his grantee presumptively or actually for the benefit and protection of his adjoining land which he retains." (Internal quotation marks omitted.) Shippan Point Assn., Inc. v. McManus, 34 Conn. App. 209,212, 640 A.2d 1014, cert. denied, 229 Conn. 923, 642 A.2d 1215 (1994). CT Page 6101
I. Uniform Covenant
"With respect to . . . a [uniform] covenant, any grantee under a general or uniform development scheme may enforce the restrictions against any other grantee." (Internal quotation marks omitted.)Mannweiler v. LaFlamme, 46 Conn. App. 525, 535, 700 A.2d 57, cert. denied, 243 Conn. 934, 702 A.2d 641 (1997). "The doctrine of the enforceability of uniform restrictive covenants is of equitable origin. The equity springs from the presumption that each purchaser has paid a premium for the property in reliance on the uniform development plan being carried out. While that purchaser is bound by and observes the covenant, it would be inequitable to allow any other landowner who is also subject to the same restriction to violate it." Id., 535-36.
"Here, the uniform plan development must be derived from the language of the covenants inserted in the deeds of various owners' plots and it is necessary to determine the intent of the owner in creating the restrictions upon any lot to make the benefit of them available . . . to the owners of the other lots in the tract. The meaning and effect of the [restrictions] are to be determined, not by the actual intent of the parties but by the intent expressed in the deed, considering all its relevant provisions and reading it in the light of the surrounding circumstances. . . ." (Internal quotation marks omitted.) Id., 536; Kellyv. Ivler, 187 Conn. 31, 39, 450 A.2d 817 (1982).
"[T]here are four factors to be considered in determining whether covenants contained in deeds executed by the owner of property who is dividing his property into building lots under a general development scheme so restricted the use of one or more lots under the plan that neighboring owners whose predecessors in title were grantees of the common grantor may enforce certain of the covenants against other owners with the intent to enforce a uniform restriction. These factors are: (1) the common grantor's selling or stating an intention to sell an entire tract of land, (2) the common grantor's exhibiting a map or plot of the entire tract at the time of the sale of one of the parcels, (3) the actual development of the tract in accordance with the restrictions, and (4) a substantial uniformity in the restrictions imposed in the deeds executed by the common grantor." (Internal quotation marks omitted.)Mannweiler v. LaFlamme, supra, 46 Conn. App. 536.
With respect to the fourth factor, "[s]uch uniformity is especially important to a finding that a common plan of development exists. . . . To satisfy this factor, it is not necessary that the restrictions in every deed be found to be identical, as long as the scheme of creating a uniform subdivision is still apparent. . . . Nor is it necessary, at this CT Page 6102 step in our inquiry, to ascertain the precise meaning of the restrictions, because we seek at this step to determine whether the common grantor intended to create a uniform plan of development, not whether the skill of the grantor's scrivener still renders such a plan enforceable today." (Citations omitted; emphasis in original.) Contegniv. Payne, 18 Conn. App. 47, 57, 557 A.2d 122 (1989). In Contegni the court found that there was a uniform scheme. See id., 58. The court noted that the grantor "conveyed the lots in the developed area through the execution of twenty-five deeds. The restrictions in these deeds [were] not identical. Nonetheless, no buildable lot was conveyed without a deed restriction on the first cost of the dwelling house, carriage house or stable, and garage that could be built on the property. Every deed explicitly restricts the burdened property to residential use." Id., 57.
II. Protection of Retained Lands Covenant
"Where the owner of two adjacent parcels conveys one with a restrictive covenant and retains the other, whether the grantor's successor in title can enforce, or release, the covenant depends on whether [the covenant] was made for the benefit of the land retained by the grantor in the deed containing the covenant, and the answer to that question is to be sought in the intention of the parties to the covenant expressed therein, read in light of the circumstances attending the transaction and the object of the grant. . . . If the covenant is for the benefit of the retained land it runs with the land and may be enforced by the successor in title to the retained land against the successor in title to the conveyed land, on the principle which prevents one with notice of the just rights of others from defeating those rights." (Citations omitted; internal quotation marks omitted.) Contegni v. Payne supra, 18 Conn. App. 61.
In cases that "mentioned the grantor's homestead . . . the question of intent in both cases was determined pursuant to the broader principle that a right to enforce a restriction of this kind will not be inferred to be personal when it can fairly be construed to be appurtenant to the land, and that it will generally be construed to have been intended for the benefit of the land, since in most cases it could obviously have no other purpose, the benefit to the grantor being usually a benefit to him as owner of the land, and that, if the adjoining land retained by thegrantor is manifestly benefited by the restriction, it will be presumed that it was so intended." (Citations omitted; emphasis in original; internal quotation marks omitted.) Grady v. Schmitz, 16 Conn. App. 292,297-98, 547 A.2d 563, cert. denied, 209 Conn. 822, 551 A.2d 755 (1988).
"Although the presence of the grantor's homestead on the retained land may be an indication of an intent to benefit that land, our cases do not suggest . . . that the restrictive covenant in this case must be limited CT Page 6103 to benefit the grantor's homestead." Id., 298.
III. Subdividing
In Mannweiler v. LaFlamme, 46 Conn. App. 525, 700 A.2d 57, cert. denied, 243 Conn. 934, 702 A.2d 641 (1997), the court held that even though the deeds did not expressly restrict subdividing, the language in the deeds restricting each lot to "one house for one family" precludes a party from subdividing the lot and building an additional house. See id., 537-539.
Moreover, our Supreme Court has stated that the "fact that the plaintiff's property would be of more value if the restriction were removed is of no consequence. . . . The plaintiff purchased the land with fill knowledge that the eight-acre tract was subject to the restriction; he got everything he bargained for, and presumably took the restriction into consideration when he agreed on the price he paid: He was under no compulsion to make the purchase, and, if the ownership of this . . . ground seemed sufficiently desirable to induce him to agree to the terms demanded and to accept a deed containing the restriction, it is neither unjust nor inequitable that he be required to observe its limitations." (Citation omitted; internal quotation marks omitted.) Harris v. Pease,135 Conn. 535, 541-42, 66 A.2d 590 (1949).
IV. Changed Circumstances
"In an action for removal or relaxation of restrictions the issues are not the same as in one seeking to enforce them by enjoining breach thereof, and the judgment is more drastic. . . . It is only where a party seeks by way of affirmative relief to have a restrictive covenant modified or nullified on the basis of a change of circumstance that he must make it manifest that its purpose has been permanently frustrated, and that the change is so great as to defeat the object of the covenant." (Internal quotation marks omitted.) Grady v. Schmitz, 16 Conn. App. 292,301, 547 A.2d 563, cert. denied, 209 Conn. 822, 551 A.2d 755 (1988).
An example of changed circumstances includes findings "that several lots within the original twenty-five lot area have been subdivided and now contain, in violation of the covenant, two houses . . . [and] many of the properties in the area have carriage houses that have been rented out to tenants in violation of the restrictive covenant." Shippan PointAssn., Inc. v. McManus, supra, 34 Conn. App. 216.
In Grady v. Schmitz, supra, 16 Conn. App. 292, the court held that there were no changed circumstances because even though the original homestead property had been subdivided, "the other parcels in the area CT Page 6104 transferred by [the grantor] subject to the covenant have not been subdivided and remain essentially the same size they were originally. Thus, much of the benefitted property is still being used for the purpose contemplated by the original covenant, and it cannot reasonably be said that the circumstances show an abandonment of the original plan. . . ." Id., 302.
Whether the parties intended the restrictive covenant to run with the land is a question of law to be determined by the court in the light of all the circumstances surrounding the transaction. Grady v. Schmitz,16 Conn. App. 295.
In the instant case, the court finds that the restrictive covenant contained in the plaintiff's deed from the Lockes is one that is a uniform covenant contained in the deeds executed by the original owner of the property who was dividing his property into building lots under a general development scheme as it meets the four factors or criteria set forth in Mannweiler v. LaFalmme, supra, 46 Conn. App. 536. Consequently, any grantee under such general development scheme may enforce the restrictions against any other grantee.
The court further finds that the restriction is one which runs the land for the reason that when it was created it was for the benefit of the retained land — the homestead of the Lockes. There is no reason to find that the restrictive covenant in this case must be limited to the benefit of the grantor's homestead as discussed in Contegni v. Payne, supra, 18 Conn. App. 61.
The fact that the Locke homestead was later sold without the restriction does not, as the plaintiff's claim, indicate that there was not a uniform plan nor does it present a sufficient change in circumstances so as to release the plaintiffs from their restrictive covenant. As noted above, the plaintiff has the burden to make it manifest that the purpose of the restriction has been permanently frustrated and that such change is so great as to defeat the object of the covenant. Grady v. Schmitz, supra 16 Conn. App. 292, 301. The court finds that the plaintiff has failed to meet that burden. The court finds, as in Grady, that much of the benefitted property is still being used for the purpose contemplated by the original covenant and it cannot reasonably said that the circumstances show an abandonment of the original plan.
The court cites the additional equitable factor in determining the rights of the parties in this case. As noted in Harris v. Pease, supra, ". . . The plaintiff purchased the land with full knowledge that the [land] was subject to the restriction; he got everything he bargained for CT Page 6105 . . . it is neither unjust or inequitable that he be required to observe its limitations."
For the foregoing reasons, the plaintiffs' claim for a declaratory judgment that the restrictive covenant is non-binding and unenforceable and for a judgment that said restriction is null and void as to Lot #12 on a map entitled "Locke Land, Southbury, Conn. Owned and Developed by Donald H. and Rosalie E. Locke, Southbury, Conn." is hereby denied.
Judgment is to enter for the defendants and against the plaintiffs.
By the Court
Joseph W. Doherty, Judge