******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# LUZ E. BUENO ET AL. *v.* MICHAEL FIRGELESKI ET AL.
## (AC 39074)

Lavine, Elgo and Harper, Js.

*Syllabus*

The plaintiff landowners sought a judgment declaring void and unenforceable a restrictive covenant contained in a deed to certain of their real property to enable them to subdivide the property and to sell a portion of it for development. The plaintiffs' property was originally part of thirty acres of farmland in Darien that included a homestead. The defendants own lots that are adjacent to the plaintiffs' property and were created from a portion of the farmland. Certain of the defendants own land in the B subdivision, and other defendants own land in the W subdivision. In 1934, the beneficiaries of a life estate in the farmland initiated a partition action seeking permission to sell the land, due to changing economic and societal circumstances. Thereafter, M acquired approximately two acres of the farmland that included the homestead. In 1941, the Superior Court ordered a committee to convey to V approximately one and one-half acres of the farmland that were adjacent to M's property. The committee deed conveying the property contained the subject restrictive covenant, which, inter alia, permitted only one dwelling on the premises and set certain building setback requirements. M and V subsequently conveyed their properties to S and his wife, who, in turn, sold a portion of the property they had acquired from V to the plaintiffs, and that property was subject to the restrictive covenant. S and his wife then sold the remainder of their property, including a triangularly shaped area of land, and the deed of conveyance stated that the property was subject to the restrictive covenant insofar as it affected the premises. That property is now the W subdivision, which is comprised of three lots with single-family houses on them. Lot 2 contains the original homestead and lot 3, now owned by two of the defendants, includes the triangularly shaped area. The deed to lot 3 stated that the premises were subject to the effect, if any, of the restrictive covenant. The remainder of the original farmland is now the B subdivision, which is comprised of thirty-one lots, four of which are owned by the other defendants. None of the deeds to the lots in the B subdivision contained the restrictive covenant. After a trial to the court, the trial court rendered judgment in favor of the plaintiffs, declaring that the relevant portions of the restrictive covenant were unenforceable by the defendants due primarily to a significant and permanent change of circumstances that frustrated the purpose for creating the restriction. On the defendants' appeal to this court, *held*:

1. The defendants could not prevail on their claim that three of the trial court's factual findings were not supported by the evidence, as those findings were not clearly erroneous and the defendants failed to demonstrate how those findings affected the court's ultimate, and dispositive, conclusion that the restriction was unenforceable due to a permanent and substantial change in circumstances:

   a. The trial court properly found that lot 3 violated the restrictive covenant in its chain of title; when the W subdivision was created and houses were constructed on lots 1 and 3 in addition to the preexisting homestead on lot 2, the restriction that limited the number of dwellings on the entire premises to one was violated, the house on lot 3 violated the restriction that no building was to be erected within twenty-five feet of the southerly boundary of the premises, and even if the court's finding was erroneous, the defendants were not harmed by it, as it was not the basis of the court's conclusion that the restrictive covenant was unenforceable due to a significant change in circumstances.

   b. The trial court properly found that the homestead was the intended beneficiary of the restrictive covenant; when viewed in the context of the historical development of the original farmland property, including the W and B subdivisions, and the language, or lack thereof, contained in the relevant deeds, the restrictive covenant clearly was intended to

protect the homestead from the suburban development and encroachment taking place in Darien at the time the committee conveyed the approximately one and one-half acres of the farmland to V.

c. The trial court's finding that the dominant estate did not include the B subdivision was supported by the evidence; the restrictive covenant was intended to benefit the homestead and was not contained in any of the deeds to the lots in the B subdivision, and if the grantor had intended to benefit the lots in the B subdivision by restricting development, it could fairly be assumed that the grantor would have similarly restricted development there.

2. The defendants could not prevail on their claim that the court erred by going beyond the four corners of the relevant deeds in interpreting the "effect, if any" language in the chain of title to lot 3: the descriptions of the restrictive covenant in the deeds conveying all or a portion of the land belonging to the parties were not consistent, and, given that ambiguity, it was not improper for the court to look beyond the four corners of the deeds to determine the intent of the parties to the various deeds; moreover, contrary to the defendants' assertion, the trial court did not err in concluding that the entire W subdivision and not just the triangularly shaped area of land was subject to the restrictive covenant, as the relevant deed did not set off and describe a triangularly shaped area of land that by itself was subject to the restriction.

3. This court found unavailing the defendants' claim that the trial court misapplied the facts of the present case to the tests set forth in *Shippan Point Assn.*, *Inc.* v. *McManus* (34 Conn. App. 209), and *Fidelity Title & Trust Co.* v. *Lomas & Nettleton Co.* (125 Conn. 373), which was based on their claim that the court improperly focused its change of circumstances analysis on the surrounding area rather than on the property that was subject to the restrictive covenant, and erred in finding that the homestead was the intended beneficiary of the restrictive covenant rather than the B subdivision; whether the homestead or the B subdivision was the intended beneficiary of the restrictive covenant had no effect on the outcome of the case, and the trial court properly determined that the restrictive covenant was not enforceable by the defendants because its purpose had been frustrated by a substantial and permanent change in circumstances, it had been abandoned by lack of enforcement and it did not benefit any of the parties' properties.

Argued October 4, 2017—officially released March 27, 2018

*Procedural History*

Action for a declaratory judgment declaring void and unenforceable a restrictive covenant in the deed to certain of the plaintiffs' real property, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Hon. A. William Mottolese*, judge trial referee; judgment for the plaintiffs, from which the defendants appealed to this court. *Affirmed*.

*Colin B. Connor*, with whom was *Robert D. Russo III*, for the appellants (defendants).

*Edward R. den Dooven*, self-represented, with whom was *Luz Elena Bueno*, self-represented, the appellees (plaintiffs).

*Opinion*

LAVINE, J. "A covenant that is a servitude 'runs with the land'." 1 Restatement (Third), Property, Servitudes § 1.3 (1), p. 23 (2000). "When a change has taken place since the creation of a servitude that makes it impossible as a practical matter to accomplish the purpose for which the servitude was created, a court may modify the servitude to permit the purpose to be accomplished. If modification is not practicable, or would not be effective, a court may terminate the servitude." 2 Restatement (Third), Property, Servitudes § 7.10 (1), p. 394 (2000).[1]

This declaratory judgment action concerns the viability of a restrictive covenant (restriction) contained in a 1941 committee deed conveying 1.544 acres of a thirty acre farm in Darien that was once owned by Wilbur N. Waterbury (Waterbury land). The plaintiffs, Luz E. Bueno and Edward R. den Dooven,[2] own 1.38 acres of the Waterbury land.[3] The defendants, Michael Firgeleski, Allison Firgeleski, Pole M. Chan, Jessica M. Chan, Richard B. Myers, Margaret Q. Myers, Scott J. Cronin, and Eileen M. Cronin (collectively, Briar Brae defendants), and Kenneth S. Martin and Rachel P. Martin (Martins), own lots that were created from a portion of the remainder of the thirty acres of the Waterbury land and are adjacent to the plaintiffs' property. The plaintiffs sought a judgment declaring the restriction void and unenforceable to permit the sale of a portion of their property.[4] In its judgment, the court declared unenforceable the portion of the restriction that limits the plaintiffs' use of their property to one dwelling house, prohibits the erection of any building within twenty-five feet of the southern boundary, and requires approval of the grantor before erecting a structure on the property.

The defendants appealed, claiming that three of the court's factual findings are erroneous in that they are not supported by the evidence. With respect to the court's legal conclusions, the defendants claim that the court (1) improperly looked beyond the four corners of the deeds and (2) misapplied the facts of the present case to *Fidelity Title & Trust Co.* v. *Lomas & Nettleton Co.*, 125 Conn. 373, 5 A.2d 700 (1939) (restriction's purpose frustrated) and *Shippan Point Assn., Inc.* v. *McManus*, 34 Conn. App. 209, 215, 641 A.2d 144 (same), cert. denied, 229 Conn. 923, 642 A.2d 1215 (1994).[5] We affirm the judgment of the trial court.

Before turning to our legal analysis, we describe in detail the history of the many land transactions that underlie the present appeal. In the early 1930s, the estate of Wilbur N. Waterbury included a thirty acre farm on the eastern side of Hoyt Street. Beginning with a 1934 partition action that was followed years later by certain land transactions, the character of the Water-

bury land transformed from a farm to a suburban subdivision. A 1941 committee deed conveying 1.544 acres of the Waterbury land contains the restriction at the heart of the present matter. The resolution of this appeal turns on our construction of that restriction given the circumstances surrounding its creation.[6] The restriction or a variation of it is contained in the deeds to lots owned by the plaintiffs and the Martins, but it is not contained in the deeds to the lots owned by the Briar Brae defendants.

Prior to the events giving rise to this appeal, three of Waterbury's nieces were the beneficiaries of a life estate in the Waterbury land.[7] In 1934, due to changing economic and societal circumstances, the Waterbury nieces initiated a partition action seeking permission to sell the Waterbury land in whole or in part. In 1937, Mary Alice Vaughan acquired 2.11 acres of the Waterbury land, which included the Waterbury homestead, consisting of a single-family home and outbuildings. See appendix to this opinion.

In 1941, the Superior Court ordered Arthur I. Crandall, committee,[8] to convey 1.544 acres of the Waterbury land to Clyde E. Vaughan (Vaughan). Crandall's deed to Vaughan contains the subject restriction. See footnote 6 of this opinion. Vaughan's land was adjacent to the land owned by Mary Alice Vaughan on the south and on the east; the area of land on the east was triangular in shape. See appendix to this opinion. Together the Vaughans[9] owned 3.654 acres of adjoining land that fronted on Hoyt Street. The Waterbury nieces retained the remainder of the Waterbury land that surrounded the Vaughans' properties.

In 1953, Mary Alice Vaughan and Vaughan, individually, conveyed their respective properties to Robert G. Shepherd and Helen D. Shepherd (Shepherds). The deed from Mary Alice Vaughan conveying her property did not contain the restriction, but the deed conveying Vaughan's property to the Shepherds contained the restriction. Specifically the deed from Vaughan stated, "[s]aid premises are subject to . . . restrictive covenants and agreements of record . . . ." In 1954, the Shepherds conveyed a portion of the land they acquired from Vaughan, specifically 1.38 acres, to Robert W. E. Anderson and Ingeborg Smith Anderson (Andersons). The Shepherds' deed of conveyance contained the restriction and stated, "[b]eing a portion of the premises conveyed to the said grantors by" Vaughan in 1953. The Shepherds did not convey to the Andersons the triangularly shaped area of land that lay to the east of the 2.11 acres once owned by Mary Alice Vaughan.

In 1956, the Shepherds conveyed the remainder of their land, including the triangularly shaped area, to Richard L. Webb and Nina H. Webb (Webbs). The deed to the Webbs subjected their property to the restriction "insofar as they affect the above described premises

. . . ." In 1971, the Webbs created a three lot subdivision by dividing the land they had acquired from the Shepherds, i.e., lot 1, lot 2, and lot 3 (Webb subdivision).[10] Lot 2 contained the Waterbury homestead. The Martins now own lot 3, which includes a portion of the triangularly shaped area of land that Crandall deeded to Vaughan in 1941. The Martins' deed states that the premises are subject to "[t]he effect, *if any*, of restrictive covenants and agreements contained in" the deed to Vaughan. (Emphasis added.) Lot 3 is adjacent to the plaintiffs' lot on the north.

In 2008, the plaintiffs acquired 1.38 acres of land from the Andersons. The land was once part of the 1.544 acres deeded to Vaughan in 1941, less the triangularly shaped piece of land. The plaintiffs' deed contains the restriction. See footnote 6 of this opinion.

In 1954, the remaining thirty acres of Waterbury land, land that had not been owned by either of the Vaughans, was acquired by Arthur Olsen Associates, Inc. The deed conveying the remaining Waterbury land does not contain the restriction. The Darien Planning and Zoning Commission thereafter approved a thirty-one lot subdivision of single-family homes to be built on the land acquired by Arthur Olsen Associates, Inc. The subdivision is known as Briar Brae, and none of the deeds to the lots in the subdivision contains the restriction. The lots owned by the Briar Brae defendants are adjacent to the land once owned by Mary Alice Vaughan and Vaughan on the east and south.[11]

The plaintiffs commenced the present action in September, 2013.[12] Pursuant to their substitute complaint, the plaintiffs sought a declaratory judgment that the restriction in their deed is void and unenforceable. Such a declaration would enable them to subdivide their land into two lots: one for their own home and one for development. The plaintiffs alleged several reasons why the restriction should be declared void and unenforceable: (1) the 1941 deed violated the Superior Court's order to the committee,[13] (2) the circumstances of the neighborhood surrounding the Waterbury land have changed significantly, (3) the restriction has been abandoned, (4) the restriction benefits no one, (4) the restriction is unfair to the plaintiffs as they cannot reach an agreement with the beneficiaries of the restriction, (5) the restriction is barred by laches, and (6) the restriction has been extinguished by the Marketable Title Act, General Statutes § 47-33b et seq.

The court tried the matter in the fall of 2015. Numerous maps and deeds were placed into evidence, and the court viewed the thirty acres of Waterbury land in the company of the parties' counsel. The court issued its memorandum of decision on January 20, 2016.[14] We now examine the court's adjudication of the plaintiffs' claims.

The court first considered the beneficiary of the restriction. It found that the restriction first appeared in the deeds of the Martins' predecessors in title in 1956 when the Shepherds conveyed the land formerly owned by Mary Alice Vaughan and the triangularly shaped area of land formerly owned by Vaughan to the Webbs. The deed from the Shepherds to the Webbs stated in part: "Said premises are conveyed subject to restrictive covenants and agreements as set forth in a deed given by . . . Crandall . . . to . . . Vaughan . . . *insofar as they affect* the above described premises . . . ." (Emphasis added.)

The court also found that in 1971, when the Webbs subdivided the land into three building lots, they acted in disregard of the restriction. If the restriction had been applied before the Webb subdivision was created, dwellings would have been limited to the Waterbury homestead on lot 2. Moreover, when lot 2 was created, its southerly boundary rendered the Waterbury homestead in violation of the twenty-five foot setback requirement because the setback created by the subdivision was only fifteen feet.

When the Martins took title to lot 3 in 2006, schedule A attached to their deed stated in part: "Said premises are subject to . . . [t]he *effect, if any*, of restrictive covenants and agreements contained in a deed from . . . Crandall . . . to Vaughan . . . ." (Emphasis added.) The court found it "apparent that the uncertainty concerning the applicability of the restriction . . . manifest[ed] itself by the use of the words 'effect, if any.' " None of the deeds to the lots owned by the Briar Brae defendants contains the restriction. The plaintiffs' lot, therefore, is the only one of thirty-five lots created from the thirty acres of the Waterbury land that is expressly made subject to the restriction without the qualifying words, "effect, if any."

The court's memorandum of decision demonstrates its familiarity with the applicable law. Generally, "restrictive covenants fall into three classes: (1) mutual covenants in deeds exchanged by adjoining landowners; (2) uniform covenants contained in deeds executed by the owner of property who is dividing his property into building lots under a general development scheme; and (3) covenants exacted by a grantor from his grantee presumptively or actually for the benefit and protection of his adjoining land which he retains. *Stamford* v. *Vuono*, 108 Conn. 359, 364, 143 A. 245 (1928). With respect to the third class of covenants, the original grantor, who is the owner of the property benefited, and his assigns may enforce [the covenant] against subsequent purchasers of the property burdened. If the restrictive covenant is for the benefit of the remaining land of the grantor, it is an easement running with the land and may be enforced by a subsequent purchaser of the remaining land against the prior grantee and his

successors in title . . . .” (Internal quotation marks omitted.) *Grady* v. *Schmitz*, 16 Conn. App. 292, 296, 547 A.2d 563, cert. denied, 209 Conn. 822, 551 A.2d 755 (1988).

The court noted that “[w]here the owner of two adjacent parcels conveys one with a restrictive covenant and retains the other, whether the grantor’s successor in title can enforce, or release, the covenant depends on whether [the covenant] was made for the benefit of the land retained by the grantor in the deed containing the covenant, and the answer to that question is to be sought in the intention of the parties to the covenant as expressed therein, *read in the light of the circumstances attending the transaction and the object of the grant. Bauby* v. *Krasow*, 107 Conn. 109, 112–13, 139 A. 508 (1927).” (Emphasis added; internal quotation marks omitted.) *Marion Road Assn.* v. *Harlow*, 1 Conn. App. 329, 335, 472 A.2d 785 (1984). “The meaning and effect of the reservation are to be determined, not by the actual intent of the parties, but by the intent expressed in the deed, considering all its relevant provisions and *reading it in the light of the surrounding circumstances* . . . .” (Emphasis added; internal quotation marks omitted.) Id., 332.

The court found that, at the time the restriction was created, the only dwelling on the Waterbury land was the Waterbury homestead. Given the circumstances under which the Waterbury land was developed, the court inferred that the grantor intended the restriction to benefit only that portion of his remaining land containing the Waterbury homestead and its service buildings. The court buttressed its conclusion with the fact that the restriction is not contained in the deeds to any of the lots in Briar Brae and that lot 3 was conveyed subject only to the “effect, if any” of the restriction. The court concluded, therefore, that the Waterbury estate manifested an intent not to restrict the remainder of the Waterbury land, stating that the indicia of the grantor’s intent not to burden all of the Waterbury land outweighed any other evidence, including the ambivalent deed references. The court reasoned that the language “effect, if any” and similar words was consistent with the grantor’s intent. Relying on *Marion Road Assn.* v. *Harlow*, supra, 1 Conn. App. 335, the court found that the restriction in this case was intended to benefit the grantor’s retained land and could have no purpose other than to protect the grantor’s homestead.

In considering the plaintiffs’ claim that the circumstances of the Waterbury land have changed so significantly since the restriction was created that it is no longer enforceable, the court assumed given the language of the restriction, i.e., “[i]t shall run with the land hereby conveyed and be binding upon the grantee, his heirs assigns forever,” that the restriction was appurtenant to the land conveyed to the plaintiffs. Where a

restrictive covenant contains words of succession, i.e., heirs and assigns, a presumption is created that the parties intended the restrictive covenant to run with the land. See *Kelly* v. *Ivler*, 187 Conn. 31, 39–40, 450 A.2d 817 (1982).

In analyzing the evidence, the court was cognizant of the rule that "[w]here a party seeks by way of affirmative relief to have a restrictive covenant modified or nullified on the basis of a change of circumstances . . . he must make it manifest that its purpose has been permanently frustrated, and that the change is so great as to defeat the object of the covenant." *Grady* v. *Schmitz*, supra, 16 Conn. App. 301. The relief "should be granted with caution and only when the motivating considerations are not only ample but so settled and lasting that it is manifest that the purpose of the original restriction has been permanently frustrated. The changes must be so great as clearly to neutralize the benefits of the restrictions to the point of defeating the object and purpose of the covenant." (Internal quotation marks omitted.) *Fidelity Title & Trust Co.* v. *Lomas & Nettleton Co.*, supra, 125 Conn. 376–77. The change of circumstances may not be transient, and they must be drastic and permanent. Id. 378. Abandonment of a right requires the "voluntary and intentional renunciation [of a right] but the intent may be inferred as a fact from the surrounding circumstances." (Internal quotation marks omitted.) *Blum* v. *Lisbon Leasing Corp.*, 173 Conn. 175, 182, 377 A.2d 280 (1977).

In deciding whether there has been a change of circumstances sufficient to warrant nullification of the restriction, the court compared the circumstances of the Waterbury land as they were in 1941 when the restriction was created with present circumstances. The court found that the plaintiffs successfully had proved that seven years before the restriction was created, the land Crandall conveyed to Vaughan was part of a thirty acre farm on undeveloped land. In 1934, the Waterbury nieces commenced a partition action that resulted in Crandall's appointment to sell the Waterbury land.[15] From those facts, the court inferred that in 1934, the character of the neighborhood in the vicinity of the Waterbury land was changing from agricultural to suburban. Suburban housing had begun to appear in the section of Darien where the Waterbury land was located, but the Waterbury land was not yet part of the suburban transition. In 1937, only one residential structure with outbuildings existed on the Waterbury land. None of the remaining land was developed until 1954 when Arthur Olson Associates, Inc., received approval from the Darien Planning and Zoning Commission to create the thirty-one lot Briar Brae subdivision.

The court also found that lot 3 is approximately 0.75 acres in size, which is approximately the size of the lot the plaintiffs would like to "spin off" from their land.

Briar Brae is fully developed in predominantly one-half acre lots, each of which contains a single-family home that has existed for many years. By their very nature and purpose, the homes are intended to remain permanently in their present locations. The lots owned by the plaintiffs, the Martins and the Cronins front on Hoyt Street, also known as Route 106, which is an access road to the Merritt Parkway.

The court further reasoned that *if* the restriction runs with the land, *and*, *if arguendo*, it was intended to benefit Briar Brae, it falls within the class of covenants known as the retained land theory. See *Shippan Point Assn., Inc.* v. *McManus*, supra, 34 Conn. App. 213 (restrictions imposed by grantee for benefit of adjoining land grantor retained). The court assumed for purposes of its analysis that the restriction runs with the land. The court applied the *Fidelity Title & Trust Co.* change of circumstances test to its factual findings and concluded that the plaintiffs had "amply satisfied" the change of circumstances test. The court found manifest that the purpose of the restriction has been frustrated permanently as the very land that it was intended to benefit, Briar Brae, had itself been subdivided into numerous building lots each of which is free of any such restriction and approximately the size of the lot that the plaintiffs seek to create.

Moreover, the court found that lot 3, which is nominally similarly restricted as the plaintiffs' land, has been in flagrant violation of the restriction for many years. The court noted that repeated violations of a restriction without effective action to enforce it constitute grounds for nullification of the restriction. See *Cappo* v. *Suda*, 126 Conn. App. 1, 9, 10 A.3d 560 (2011) (court obligated to enforce restriction unless defendant can show enforcement inequitable). To establish abandonment of an easement by the acts of the owner of the dominant tract, one must prove that the owner's acts are "of so decisive and conclusive a character as to indicate and prove his intent to abandon the easement."[16] (Internal quotation marks omitted.) *American Brass Co.* v. *Serra*, 104 Conn. 139, 148, 132 A. 565 (1926). In addition, the owner must act voluntarily. Id. The court found that if the restriction requiring approval to build runs with the land, the right to enforce the restriction had been abandoned over a period of seventy-four years by the failure of anyone to exercise it with respect to any of the thirty-five lots in the Waterbury land, except the plaintiffs' lot. In finding that the restriction had been abandoned by failure to enforce it, the court compared the facts of the present case with *Shippan Point Assn., Inc.*, in which twelve of twenty-five lots comprising the dominant estate in a development contravened a restrictive covenant. In the present case, thirty-four of thirty-five lots contravene the restriction.

The court found that lot 3 is the southern portion of

the land that the Shepherds conveyed to the Webbs and that the deed conveyed the entire parcel subject to the restriction.[17] If the parcel was subject to the restriction, development of the parcel was limited to the Waterbury homestead. Sometime after 1956, when houses were constructed on lots 1 and 3 of the Webb subdivision, that portion of the restriction that limited the number of dwelling houses to one was violated. When a house was built on lot 3, that portion of the restriction that prohibits the erection of a building within twenty-five feet of the southern boundary applied not to the property as a three lot subdivision, but to the land as a single parcel. The court concluded that when more than one dwelling was constructed on the Webbs' land, the purpose of the twenty-five foot setback became meaningless not only as to the Webb subdivision, but also as to the only property that could possibly benefit from it, i.e., the plaintiffs' property, because it adjoins the Webb subdivision on the south and the plaintiffs seek to avoid the restriction.

The court further found that the plaintiffs' property itself is in violation of the restriction. In 1959, a two vehicle garage was constructed on the land without the grantor having approved the plan. In 2004, the main house was expanded by more than 2500 square feet and a shed was constructed eighteen feet from the southern border. Neither improvement was approved by the grantor. A perimeter fence also was added to the premises without approval.

On the basis of the foregoing, the court declared so much of the restriction that limits the plaintiffs' lot to one dwelling house, prohibits the erection of any building within twenty-five feet of the southern border of the plaintiffs' lot, or requires grantor approval of structures on the plaintiffs' lot unenforceable by the defendants. The defendants filed a motion for reargument, which the court denied.[18] The defendants appealed.

On appeal, the defendants claim that in declaring certain portions of the restriction unenforceable, the court found three facts that are not supported by the evidence and also committed legal error by going beyond the four corners of the deeds and misapplying the tests enunciated in *Fidelity Title & Trust Co.* and *Shippan Point Assn., Inc.* In response, the plaintiffs repeatedly noted that the trial court correctly declared portions of the restriction void and unenforceable due to a significant and permanent change of circumstances that frustrate the purpose of the restriction and that the defendants are not benefited by the servitude created by the restriction. We agree with the plaintiffs.

In the final analysis, the resolution of this appeal turns on the construction of the restriction in the 1941 committee deed to Vaughan and subsequent deeds to the land formerly owned by Vaughan and the circum-

stances surrounding its creation. "The principles governing the construction of instruments of conveyance are well established. In construing a deed, a court must consider the language and terms of the instrument as a whole. . . . Our basic rule of construction is that recognition will be given to the expressed intention of the parties to a deed or other conveyance, and that it shall, if possible, be so construed as to effectuate the intent of the parties. . . . In arriving at the intent expressed . . . in the language used, however, *it is always admissible to consider the situation of the parties and the circumstances connected with the transaction*, and every part of the writing should be considered with the help of that evidence. . . . The construction of a deed in order to ascertain the intent expressed in the deed presents a question of law and requires consideration of all its relevant provisions in light of the surrounding circumstances." (Emphasis altered; internal quotation marks omitted.) *Bolan* v. *Avalon Farms Property Owners Assn., Inc.*, 250 Conn. 135, 140–41, 735 A.2d 798 (1999).

## I

## FACTUAL CLAIMS

The defendants claim that three of the court's interrelated factual findings are erroneous because there is no evidence to support the findings (1) that lot 3 violates the restriction, (2) that the Waterbury homestead was the intended beneficiary of the restriction, and (3) that the dominant estate does not include the Briar Brae subdivision. We disagree.

We review the trial court's findings of fact by the clearly erroneous standard. *Valley National Bank* v. *Marcano*, 174 Conn. App. 206, 217, 166 A.3d 80 (2017). "[W]e will upset a factual determination of the trial court only if it is clearly erroneous. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the records as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. A finding is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Surrells* v. *Belinkie*, 95 Conn. App. 764, 767, 898 A.2d 232 (2006).

On the basis of our review of the record, the court's memorandum of decision, and the briefs of the parties, we conclude that the court's factual findings are not clearly erroneous, and we are not left with a firm conviction that a mistake has been made. Moreover, even if we were to assume that the three findings are clearly erroneous, the defendants have not demonstrated how those findings affected the court's ultimate, and disposi-

tive, conclusion that the restriction is unenforceable due to a permanent and substantial change in circumstances. For these reasons, the defendants cannot prevail on their claim that the court's findings are not supported by the evidence.

## A

The defendants claim that the court's finding that lot 3 violates the restriction is not supported by the evidence. We disagree.

The court found that the restriction in the deeds to the Martins' predecessors in title first appeared in 1956 when the Shepherds conveyed their property to the Webbs. The deed from the Shepherds to the Webbs states in part: "All that certain piece . . . of land, together with the buildings and improvements thereon . . . containing in area 2.274 acres . . . and bounded . . . as follows: Northerly 293.48 feet . . . Easterly 317.17 feet . . . Southerly 251.56 feet . . . Westerly 385.27 feet . . . . The major portion of said premises is shown and delineated on a certain map entitled Map Showing Property to be conveyed to Mary Alice Vaughan . . . 1937 . . . and the Easterly portion of said premises is . . . shown . . . on a certain map entitled, Map of Parcel No. 5 . . . . *Said premises are conveyed subject to restrictive covenants and agreements as set forth in a deed given by . . . Crandall . . . to . . . Vaughan . . .* insofar as they affect the above described premises . . . ." (Emphasis added; internal quotation marks omitted.) The plain language of the deeds makes clear that all of the land being conveyed, i.e., "said premises," is subject to the restriction *insofar as it may be affected*. When the Martins took title to lot 3 in 2006, their deed contained the following language: "Said premises are subject to . . . [t]he *effect, if any,* of restrictive covenants and agreements contained in a deed from . . . Crandall . . . to . . . Vaughan . . . ." (Emphasis added.) The applicable restrictions are that "said premises shall be used for private residential purposes only, and shall be limited to the erection thereon of one dwelling house and accessory buildings . . . and no building shall be erected . . . within twenty-five . . . feet of the Southerly line thereof . . . ."

The court found that when the Webbs subdivided the land into three lots, they did so in disregard of the one dwelling house and setback restrictions. The court explained that the restriction limited the number of dwellings on the premises to one. At the time the Webbs purchased the land, one dwelling, the Waterbury homestead, existed on the premises. The construction of houses on lot 1 and lot 3 violated the restriction that limited the number of dwellings to one. When a dwelling was erected on lot 3 of the Webb subdivision, it violated the restriction that no building shall be erected within twenty-five feet of the southerly boundary of the prem-

ises. The restriction appears in the chain of title to lot 3 in the deed from Vaughan to the Shepherds and in the deed from the Shepherds to the Webbs and in the deed to the Martins. The court found that the Webbs violated the restriction when they constructed houses on each lot of their subdivision, including lot 3. We conclude, therefore, that the court's finding that lot 3 violates the restriction is not clearly erroneous.

Moreover, the defendants have failed to persuade us that they have been harmed by the finding. An appellant bears the burden of demonstrating that a court's erroneous finding was harmful because it likely affected the result. See *Sander* v. *Sander*, 96 Conn. App. 102, 118, 899 A.2d 670 (2006). Even if we assume that the court's finding that lot 3 violates the restriction is not supported by the evidence, that error, if any, is harmless as it is not the basis of the court's ultimate conclusion that the restriction was unenforceable due to a permanent, substantial change in circumstances. The finding that lot 3 violates the restriction is but one part of the court's analysis of whether the restriction should be declared void and unenforceable. See *73-75 Main Avenue, LLC* v. *PP Door Enterprise, Inc.*, 120 Conn. App. 150, 162, 991 A.2d 650 (2010) (court did not base finding on single fact). As the plaintiffs repeatedly point out, the primary reason the court concluded that the restriction was unenforceable was due to a significant change of circumstances.

B

The defendants claim that the court's finding that the Waterbury homestead was the intended beneficiary of the restriction is clearly erroneous. We do not agree.

"[L]anguage in a deed that purports to create a restrictive covenant must be construed *in light of the circumstances attending and surrounding the transaction. . . .* The meaning and effect of the reservation are to be determined, not by the actual intent of the parties, but by the intent expressed in the deed, considering all its relevant provisions *and reading it in light of the surrounding circumstances . . . .* The primary rule of interpretation of such [restrictive] covenants is to gather the intention of the parties from their words, by reading, not simply a single clause of the agreement but the entire context, *and, where the meaning is doubtful, by considering such surrounding circumstances as they are presumed to have considered when their minds met.*" (Citations omitted; emphasis altered; internal quotation marks omitted.) *Wykeham Rise, LLC* v. *Federer*, 305 Conn. 448, 480–81, 52 A.3d 702 (2012) (*Vertefeuille, J.*, concurring.)

"[T]he law is clear that the description in the deed, if clear and unambiguous, must be given effect. In such a case, there is no room for construction. The inquiry is not the intent of the parties but the intent which is

expressed in the deed. . . . Where the deed is ambiguous, however, the intention of the parties is a decisive question of fact. . . . In ascertaining the intention of the parties, it [is] proper for the trial court to consider *the surrounding circumstances*." (Emphasis added; internal quotation marks omitted.) *Har* v. *Boreiko*, 118 Conn. App. 787, 795–96, 986 A.2d 1072 (2010). "Where a deed is ambiguous the intention of the parties is a decisive question of fact. . . . In case of doubt, the grant will be taken most strongly against the grantor." (Citations omitted; internal quotation marks omitted.) *Faiola* v. *Faiola*, 156 Conn. 12, 18, 238 A.2d 405 (1968).

"[E]vents too distantly removed in time from the original [developer's] conveyances to reflect [the developer's] intent one way or another are not relevant . . . *although they would bear on the equitable issue of enforceability of the covenants due to changed circumstances*." (Emphasis in original; internal quotation marks omitted.) *Shippan Point Assn., Inc.* v. *McManus*, supra, 34 Conn. App. 214, quoting *Contegni* v. *Payne*, 18 Conn. App. 47, 55, 557 A.2d 122, cert. denied, 211 Conn. 806, 559 A.2d 1140 (1989).

The 1941 committee deed to Vaughan states: "This deed is given by the grantor and accepted by the grantee upon the following restrictive covenants and agreements, which shall run with the land hereby conveyed and be binding upon the grantee, his heirs and assigns forever . . . ." The court, being familiar with the classes of restrictive covenants, unsurprisingly determined that the restriction falls into the category of one exacted by a grantor from his grantee " 'presumptively or actually for the benefit and protection of his adjoining land which he retains,' " citing *Stamford* v. *Vuono*, supra, 108 Conn. 364. If the restriction is for the benefit of the remaining land of the grantor, it runs with the land and may be enforced by a subsequent purchaser of the remaining land against the grantee and his or her successors in title. Id., 365; see also *Grady* v. *Schmitz*, supra, 16 Conn. App. 296.

The court searched the defendants' posttrial briefs to identify a legal theory under which they claimed to enjoy the right to enforce the restriction. In their posttrial brief, the defendants asserted that they may enforce the restriction, "as owners of the benefitted remaining land, against the [p]laintiffs upon the equitable principle that prevents one having knowledge of the just rights of others from defeating those rights."[19] Despite their assertion, the court found that the defendants failed to analyze how the *equitable* principle supports their position.[20] The defendants have not offered us an explanation on appeal, and we find the principle inapplicable. See footnote 19 of this opinion.

The court found on the basis of the evidence that at the time the restriction was created in 1941, the remainder of the land was undeveloped farmland. Mary

Alice Vaughan's land was adjacent to the plaintiffs' property to the north and also fronted on Hoyt Street. The court inspected the entire thirty acre parcel in the company of the parties' counsel and found that with the exception of the lots owned by the Martins and the Cronins, the remaining thirty acres of the Waterbury land is topographically distinct from the plaintiffs' property in that it is situated at a high elevation and is physically isolated from the plaintiffs' property. The court therefore inferred that when viewed in the context of the development of the Waterbury land, including Briar Brae and the Webb subdivision, the restriction was intended to benefit only that portion of the grantor's remaining land depicted on the plaintiffs' exhibit 23, which is the Waterbury homestead. The court found that its inference was buttressed by the fact that the restriction is not contained in any of the deeds to the thirty-one lots comprising Briar Brae. Lot 3 was conveyed to the Martins only subject to the "effect, if any" of the restriction. The court, therefore, concluded that the Waterbury estate manifested an intent not to restrict the remainder of the thirty acres, which is now Briar Brae.

The court found that the language "effect, if any" and similar words was consistent with the grantor's intent. In coming to its conclusion, the court relied on *Marion Road Assn.* v. *Harlow*, supra, 1 Conn. App. 335–36, stating that the present facts "bring this conveyance within the class of cases in which the restrictions will generally be construed to have been intended for the benefit of the [retained] land, since in most cases it could obviously have no other purpose, the benefit to the grantor being usually a benefit to him as owner of the land, and . . . if the adjoining land retained by the grantor is manifestly benefitted by the restriction, it will be presumed that it was so intended." (Internal quotation marks omitted.) In applying the *Marion Road Assn.* rationale, the court stated that it is "obvious" that the restriction could have no other purpose than to protect the grantor's homestead.

On the basis of our review of the evidence and the historical development of the Waterbury land, we agree with the court that the grantor intended to protect the Waterbury homestead from the suburban development and encroachment taking place in Darien at the time Crandall conveyed the 1.544 acres of the Waterbury land to Vaughan.[21] We thus conclude that the court's finding that the Waterbury homestead was the intended beneficiary of the restriction is not clearly erroneous.

C

The defendants' third claim of factual error is that the court improperly found that the dominant estate did not include Briar Brae. We again disagree that the court's finding is unsupported by the evidence.

In its memorandum of decision, the court concluded that the Waterbury homestead was the beneficiary of the restriction. In reaching that conclusion, it stated: "If the restriction runs with the land and if, arguendo, it was intended to benefit Briar Brae, it falls within the . . . class [of restrictions] which is known as the retained land theory." As we concluded in part I B of this opinion, the court properly found that the restriction was for the benefit of the Waterbury homestead. Most significantly, the restriction is not contained in any of the deeds to the lots in Briar Brae. If the grantor had intended to benefit the lots in Briar Brae by restricting development, it can fairly be assumed that the grantor would have similarly restricted development there.

Finally, the defendants claim that the court's three alleged erroneous findings are interconnected and have caused them prejudice. Despite this assertion, the defendants have offered no explanation as to how they have been prejudiced or harmed by the court's findings. The defendants reside in single-family homes on lots of approximately one-half acre in size. They have not explained how permitting the plaintiffs to subdivide their lot into two lots of approximately 0.75 acres in size will cause them harm. The defendants, therefore, cannot prevail on their claim that three of the court's factual findings are not supported by the evidence.

## II

### LEGAL CLAIMS

The defendants claim that the court erred as a matter of law by (1) going beyond the four corners of the deeds in its interpretation of the "effect, if any" language in the Martins' chain of title, and (2) misapplying the significant change of circumstances test of *Fidelity Title & Trust Co.* and the abandonment test of *Shippan Point Assn., Inc.* We disagree with the defendants' claims.

"The trial court's legal conclusions are subject to plenary review. [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *Hartford Fire Ins. Co.* v. *Warner*, 91 Conn. App. 685, 687–88, 881 A.2d 1065, cert. denied, 276 Conn. 919, 888 A.2d 88 (2005).

### A

The defendants first claim that the court erred by going beyond the four corners of the deeds in its interpretation of the "effect, if any" language in the Martins' chain of title. We disagree.

"[Th]e determination of the intent behind language in a deed, considered in the light of all the surrounding circumstances, presents a question of law on which our

scope of review is . . . plenary. . . . Thus, when faced with a question regarding the construction of language in deeds, the reviewing court does not give the customary deference to the trial court's factual inferences. . . .

"The meaning and effect of the [restrictive covenant] are to be determined, not by the actual intent of the parties, but by the intent expressed in the deed, considering all its relevant provisions and reading it in the light of the surrounding circumstances . . . . The primary rule of interpretation of such [restrictive] covenants is to gather the intention of the parties from their words, by reading, not simply a single clause of the agreement but the entire context, and, *where the meaning is doubtful, by considering such surrounding circumstances as they are presumed to have considered when their minds met*. . . . A restrictive covenant must be narrowly construed and ought not to be extended by implication. . . . Moreover, if the covenant's language is ambiguous, it should be construed against rather than in favor of the covenant." (Citations omitted; emphasis added; internal quotation marks omitted.) *Alligood* v. *LaSaracina*, 122 Conn. App. 479, 482, 999 A.2d 833 (2010).

The restriction appeared in the 1941 committee deed to Vaughan and stated in relevant part: "This deed is given by the grantor and accepted by the grantee upon the following restrictive covenants and agreements, which shall run with the land hereby conveyed and be binding upon the grantee, his heirs and assigns forever . . . ." The 1953 deed from Vaughan conveying his property to the Shepherds contained the restriction stated in the following manner: "Said premises are subject to . . . restrictive covenants and agreements of record . . . ." In 1954, the Shepherds conveyed 1.38 acres of land to the Andersons; the deed contained the following pertinent language: "Said premises . . . [b]eing a portion of the premises conveyed to the said grantors by . . . Vaughan by a deed dated . . . 1953 . . . [s]aid premises are conveyed subject to . . . [r]estrictive covenants contained in a deed from . . . Crandall . . . to . . . Vaughan . . . ." In 1956, the Shepherds sold 2.274 acres of their land to the Webbs and signed a deed that stated in relevant part: "Said premises are conveyed subject to restrictive covenants and agreements as set forth in a deed given by . . . Crandall . . . to . . . Vaughan . . . insofar as they affect the above described premises . . . ." Schedule A attached to the Martins' deed states in relevant part that the premises are subject to "[t]he effect, if any, of restrictive covenants and agreements contained in a deed from . . . Crandall . . . to . . . Vaughan . . . ." The plaintiffs' deed states in relevant part that the premises are subject to "[r]estrictive covenants and agreements set forth in a deed from . . . Crandall . . . to . . . Vaughan . . . ."

The descriptions of the restriction in the deeds conveying all or a portion of the land belonging to the parties are not consistent. The court found that language such as "effect, if any" in the deeds raised a question as to the applicability of the restriction to the present day. "Where legal conclusions are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts found by the [finder of facts]." (Internal quotation marks omitted.) *Shippan Point Assn.*, *Inc.* v. *McManus*, supra, 34 Conn. App. 214. Given that ambiguity in the deeds, we conclude that it was not improper for the court to look beyond the four corners of the deeds to determine the intent of the parties to the deeds, as it was entitled to do pursuant to our decisional law. See, e.g., *Wood* v. *Amer*, 54 Conn. App. 601, 605, 736 A.2d 162 (1999), aff'd, 253 Conn. 514, 755 A.2d 175 (2000). The defendants' claim therefore fails.

B

The defendants' second legal claim is that the court erred by concluding that the restriction that encumbered the triangular area of land acquired by Vaughan expanded to encumber the entire Webb subdivision when it was conveyed by the Shepherds to the Webbs. We disagree.

As we have stated throughout this opinion, the intent of the parties is to be determined by the language of the deed. In their appellate brief, the defendants have not looked to the language of the relevant deed but rely instead on testimony and the stated beliefs of the parties. Their claim and argument ignores the plain language of the deed from the Shepherds to the Webbs: "All that certain piece . . . of land, together with the buildings and improvements thereon . . . containing in area 2.274 acres . . . and bounded . . . as follows: Northerly 293.48 feet . . . Easterly 317.17 feet . . . Southerly 251.56 feet . . . Westerly 385.27 feet . . . . The major portion of said premises is shown and delineated on a certain map entitled Map Showing Property to be conveyed to Mary Alice Vaughan . . . 1937 . . . and the Easterly portion of said premises is . . . shown . . . on a certain map entitled, Map of Parcel No. 5 . . . . *Said premises are conveyed subject to restrictive covenants and agreements as set forth in a deed given by . . . Crandall . . . to . . . Vaughan . . .* insofar as they affect the above described premises . . . ." (Emphasis added; internal quotation marks omitted.) The entire parcel acquired by the Webbs was made subject to the restriction "insofar as they affect the above described premises . . . ." The premises described in the deed is roughly rectangular in shape. No portion of the deed sets off and describes a triangularly shaped area of land that by itself is subject to the restriction. On the basis of our construction of the Webbs' deed, we conclude that the court did not err

by concluding that the entire premises purchased by the Webbs is subject to the restriction.

## C

The defendants third legal claim is that the court improperly applied the facts of the present case to the tests enunciated in *Shippan Point Assn., Inc.*, and *Fidelity Title & Trust Co.* We do not agree.

The defendants acknowledge that the basis of the plaintiffs' action is the legal theory that there has been a permanent change of circumstances that frustrates the purpose of the restriction in the deed to Vaughan, that the restriction has been abandoned, and that the restriction does not benefit anyone. After hearing the evidence and reviewing the briefs and arguments of the parties, the court agreed with the plaintiffs' arguments. In coming to its conclusions, the court found that the restriction was violated by the Webbs and the plaintiffs, and that no one sought to enforce the restriction at the time the violations were committed. Moreover, the restriction was established when there was but one residential building on thirty acres of farm land. Those thirty acres have now been subdivided into thirty-five lots with one permanent dwelling on each of them.

"[W]hen presented with a violation of a restrictive covenant, the court is obligated to enforce the covenant unless the defendant can show that enforcement would be inequitable." (Internal quotation marks omitted.) *Grady* v. *Schmitz*, supra, 16 Conn. App. 301–302. "Such a change in circumstances is decided on a case by case basis, and the test is whether the circumstances show an abandonment of the original restriction making enforcement inequitable because of the altered condition of the property involved." (Internal quotation marks omitted.) Id., 302. "Any such change in conditions must be so substantial so as to frustrate completely the intent of the original covenant so that it should be inequitable to enforce it. *Shippan Point Assn., Inc.* v. *McManus*, [supra, 34 Conn. App. 214]. Such a change in circumstances includes repeated violations of the restrictions without effective action to enforce them." *Cappo* v. *Suda*, supra, 126 Conn. App. 9. "Change in circumstances, such as use of the benefited property for purposes other than those contemplated by the original covenant, may justify the withholding of equitable relief to enforce a covenant." *Grady* v. *Schmitz*, supra, 302.

On appeal, the defendants argue that the court improperly focused its change of circumstances analysis on the surrounding area rather than on the property subject to the restrictive covenant. The defendants also argue that the court erred in finding that the Waterbury homestead was the intended beneficiary of the restriction rather than Briar Brae. Although we agree with the court that the Waterbury homestead was the intended beneficiary of the restriction, in the final analysis,

whether Briar Brae or the Waterbury homestead was the intended beneficiary, has no effect on the outcome. The purpose of the restriction has been frustrated given a permanent, substantial change in circumstances of the Waterbury land since Crandall deeded the land to Vaughan.[22] See *Shippan Point Assn., Inc.* v. *McManus,* supra, 34 Conn. App. 209.

At the time the Waterbury nieces commenced the partition action, the Waterbury land contained thirty acres of farmland and one dwelling house. The nieces alleged that the character of Darien was changing from rural farmland to suburban subdivisions. The first piece of land they partitioned—2.11 acres—contained the Waterbury homestead. The next piece of land partitioned was 1.544 acres adjacent to the Waterbury homestead. The committee's deed stated that no more than one dwelling was to be constructed on the 1.544 acres. The partition was predicated on an assumption that change was coming to the Waterbury land, and the restriction was intended to limit density and to protect the Waterbury homestead. The benefit of the restriction, therefore, inured to the Waterbury homestead.

Almost fifteen years later, the remainder of the Waterbury land was sold without restriction, save for the Darien Zoning Regulations. Since that time, that land then conveyed has been subdivided into thirty-one one-half acre lots, more or less, i.e., Briar Brae. If Briar Brae was to benefit from the restriction on the plaintiffs' land, the beneficial purpose is not obvious. Briar Brae is the embodiment of what the restriction was intended to avoid. The restriction, therefore, has been frustrated.[23]

Assuming that the restriction was to benefit the Waterbury homestead from increased suburban density, the benefit was further eroded when the Webbs created their own three lot subdivision on what was the Waterbury homestead. Although the Webbs' deed contains the "effect, if any" restriction to the entire parcel, no one in Briar Brae, if it was the intended beneficiary of the restriction, sought to enforce it when the Webbs subdivided their land or when more than one structure and a fence were erected on the plaintiffs' land. The restriction, therefore, was abandoned when none of the owners of lots in either Briar Brae or the Webb subdivision sought to enforce it.

Finally, even assuming that the purpose of the restriction was to protect the Waterbury homestead or Briar Brae, neither of the properties is benefiting from it today. Although the defendants claim that they are prejudiced by the trial court's having declared the restriction null and unenforceable, none of the owners of what was the original Waterbury land is served by preventing the plaintiffs from dividing their land roughly in half so that it conforms in approximate size to every other lot that surrounds it on three sides.

For the foregoing reasons, we conclude that the trial court properly determined that the restriction in the plaintiffs' deed is not enforceable because its purpose has been frustrated by a substantial and permanent change in circumstances, it has been abandoned by lack of enforcement, and it benefits no land.

The judgment is affirmed.

In this opinion the other judges concurred.

--------

[1] "Because servitudes create property interests that are generally valuable, courts apply the changed-conditions doctrine with caution. . . . The test is stringent: relief is granted only if the purpose of the servitude can no longer be accomplished. When servitudes are terminated under this rule, it is ordinarily clear that the continuance of the servitude would serve no useful purpose and would create unnecessary harm to the owner of the servient estate." 2 Restatement (Third), supra, § 7.10, comment (a), p. 395.

[2] The plaintiffs represented themselves in the trial court and wrote their appellate brief, but were represented by counsel for oral argument before this court.

[3] The property is commonly known as 123 Hoyt Street in Darien.

[4] The court found that the plaintiffs' lot is on the eastern side of Hoyt Street. Their house lies north of the center line, which makes the southern portion of the lot available for development pursuant to Darien Zoning Regulations. To build a single-family house on the southern portion of the lot, the plaintiffs must subdivide their land and create a building lot of at least one-half acre. A dwelling on a lot created from the plaintiffs' land that complies with Darien Zoning Regulations would violate the restriction's twenty-five foot southern border setback.

[5] The defendants do not claim that the court improperly concluded that the restriction requiring grantor approval before erecting a dwelling on the plaintiffs' lot is unenforceable.

[6] The court found that the restriction was "set forth in a deed from Arthur I. Crandall, Committee, to Clyde E. Vaughan dated June 5, 1941 . . . . This deed is given by the grantor and accepted by the grantee upon the following restrictive covenants and agreements, which shall run with the land hereby conveyed and be binding upon the grantee, his heirs and assigns forever viz: (1) said premises shall be used for private residential purposes only, and shall be limited to the erection thereon of one dwelling house and accessory buildings; (2) no building shall be erected within fifty (50) feet of the Easterly line of said premises, nor within twenty-five (25) feet of the Southerly line thereof; and (3) no building, structure or erection of any kind shall be erected or maintained on said premises, unless the plans therefore shall have been approved in writing by the grantor, or his successors, provided, that such approval shall not be unreasonably withheld." (Internal quotation marks omitted.)

[7] Waterbury's nieces were Ethel Waterbury Campbell, Florance Waterbury, and Gladys Wynne-Finch. In this opinion, we refer to them as the Waterbury nieces.

[8] The original committee was Crandall, deceased. Richard W. Fitch, deceased, succeeded Crandall as the committee.

[9] Although Bueno testified that Mary Alice Vaughan and Vaughan were husband and wife, the court made no finding in that regard.

[10] The court found that each of the lots in the Webb subdivision is approximately 0.75 acres in area. It also found that the creation of the three lot subdivision violated the restriction. When lot 2 was laid out, its southerly boundary rendered the existing residence in violation of the restriction's twenty-five foot setback, as the residence on lot 2 was setback only fifteen feet. The court also found that when a single-family home was later built on lot 1 and on lot 3, no one made an effort to enforce the restriction permitting only one dwelling on the premises.

[11] The owners of lots in Briar Brae that are not adjacent to the land formerly owned by either Mary Alice Vaughan or Vaughan are not parties to the present action.

[12] The court found that the plaintiffs commenced the action because Pole M. Chan remarked to den Dooven that "we have some property interests in common," the plaintiffs need to know who the beneficiaries of the restriction are, and an attorney the plaintiffs consulted informed them that "there

might be a deed restriction that might prevent the sale of the lot." Chan testified that he did not want a second house built on the plaintiffs' lot because "it would create a quality of life issue."

[13] The plaintiffs argued that Crandall had no right to create the restriction. The court found that the restriction did not violate the Superior Court's partition order because the court confirmed the committee sale to Vaughan thereby legitimizing both the sale and the deed. None of the parties has challenged that determination on appeal.

[14] In its memorandum of decision, the court denied the defendants' motion to dismiss the plaintiffs' cause of action filed during the course of the proceedings. The defendants have not challenged the denial of their motion to dismiss.

[15] The Waterbury nieces alleged that they had a life estate in the Waterbury land that entitled them to the income produced by the land for life but that the income from the farm was declining and expenses were increasing. The court quoted some of the allegations in the partition action, to wit: "In recent years, many properties in the section of . . . Darien in which the premises described in paragraph 2 hereof are located, have been sub-divided, and many homes erected thereon, so that the character of the neighborhood has changed from a farming section to a suburban neighborhood." (Internal quotation marks omitted.) The Waterbury nieces also alleged that the Waterbury land was no longer adapted for farming purposes.

[16] "An easement creates a nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement . . . . The burden of an easement . . . is always appurtenant." 1 Restatement (Third), supra, § 1.2 (1) and (3), p. 12. "A 'negative easement' is a restrictive covenant." Id., § 1.3 (3), p. 23.

[17] The deed from the Shepherds to the Webbs states in relevant part: "All that certain piece, parcel or tract of land . . . containing in area 2.274 acres . . . . Said premises are conveyed subject to restrictive covenants and agreements as set forth in a deed given by . . . Crandall . . . to . . . Vaughan . . . insofar as they affect the above described premises . . . ."

[18] The defendants also filed a motion for articulation, which the court denied. Thereafter, the defendants filed a motion for review, which this court denied.

[19] The defendants cited *Stamford* v. *Vuono*, supra, 108 Conn. 365, for the *equitable* principle upon which they rely. The principle may be traced in Connecticut jurisprudence to *Bauby* v. *Krasow*, supra, 107 Conn. 112. In *Bauby*, the plaintiff sought an injunction, and the underlying issue concerned *notice* to the party against whom the restriction was sought to be enforced. Id., 112. The equitable principle, therefore, is inapplicable to the present case.

In *Bauby*, Minnie J. Dalton owned adjoining lots. She lived in a single-family house on one of the lots; the other lot was vacant until she conveyed it to Catharine McCarthy. Id., 110–11. The warranty deed to McCarthy contained the clause: " 'Grantee agrees that in the event she shall erect a house on said property that same will be a single family house.' " Id. When Dalton died, her home was conveyed to Frederick C. Bauby, who had actual knowledge of the restrictive covenant in the deed to McCarthy. Id., 111. McCarthy sold the vacant lot to Annie Krasow by deed warranting the lot to be free of all "incumbrances." Id. Krawow began to build a three-family house on the lot, and Bauby commenced an injunctive action to enforce the restrictive covenant. Id. "The question whether [a restrictive] covenant runs with the land is material in equity only on the question of notice. If it runs with the land, it binds the owner whether he had knowledge of it or not. If it does not run with the land, the owner is bound only if he has taken the land with notice of it." Id., 112.

[20] As noted in footnote 19 of this opinion, the principle relied on by the defendants applies in equity, not in the present case in which the plaintiffs seek a judicial declaration that the restriction is void and unenforceable. This court has stated that there is a distinction between an action to enforce a restrictive covenant and one seeking to modify the restriction in perpetuity. See *Grady* v. *Schmitz*, supra, 16 Conn. App. 301. "In an action for removal or relaxation of restrictions the issues are not the same as in one seeking to enforce them by enjoining breach thereof, and the judgment is more drastic. Injunction may be denied because of conditions existing at the time, while as to a judgment which affects the covenants for all time it is to be considered that it is quite possible that another change may occur subsequently which would remove or materially affect the ground upon which the judgment was based." (Internal quotation marks omitted.) Id., quoting

*Fidelity Title & Trust Co.* v. *Lomas & Nettleton Co.*, supra, 125 Conn. 376.

[21] Despite their claim, the defendants failed to analyze the facts and the case law relied on by the court, i.e., *Stamford*, *Grady*, and *Marion Road Assn.*

[22] The defendants claim that the court improperly applied the *Shippan Point Assn.*, *Inc.*, change of circumstances test to the facts of this case, as the change of circumstances test is difficult to meet. We conclude that the change of circumstances test applied in that case was properly applied to the present facts.

In *Shippan Point Assn.*, *Inc.*, the plaintiff sought to enjoin the defendants from constructing more than one dwelling on their lot. *Shippan Point Assn.*, *Inc.* v. *McManus*, supra, 34 Conn. App. 210. The land belonging to the parties originally was part of approximately twenty-five lots formed in 1909. Id., 211. Each of the deeds contained a restrictive covenant limiting each lot to a dwelling house for a single family. Id. The defendants alleged numerous special defenses, including that the restrictive covenant was no longer effective due to changed circumstances. Id., 213. The matter had been referred to an attorney trial referee who found that twelve of the twenty-five original lots "had been implicated either in subdivision or in having more than two residential buildings . . . on individual lots." Id. This court applied the substantial change of circumstances test in *Grady* v. *Schmitz*, supra, 16 Conn. App. 301–302. In addition to its finding that twelve of the original twenty-five lots now contained two houses, the attorney trial referee found that many properties had carriage houses that were rented in violation of the covenant. Id., 216. This court concluded that due to a substantial change in the conditions, the "original covenant has now been completely frustrated and it would be inequitable to enforce it." Id.

In the present case, the defendants rely on several Superior Court cases to support their argument that the facts of this case do not warrant a finding that the restriction has been frustrated due to a change of circumstances. After reviewing the cases cited by the defendants, we conclude that they do not support their position. See *Discala* v. *Arcamone*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-06-4007607-S, 2006 WL 1644533, *8 (May 24, 2006) (lots in subdivision developed in strict accordance with restrictions, no lots subdivided for sale or other purposes and no nonresidential uses of properties); *Revonah Woods Property Owners Assn.*, *Inc.* v. *Rubino*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-03-0197808-S, 2004 WL 2094889, *4 (August 23, 2004) (plaintiff had not abandoned effort to enforce side yard setback and three violations out of twenty-five homes does not indicate substantial change of circumstances); *Sturges* v. *Rissolo*, Superior Court, judicial district of Fairfield, Docket No. CV-01-0384369-S, 2003 WL 22205927, *4 (September 9, 2003) (no widespread rejection or disobedience of restrictive covenant and no abandonment of restrictive covenant such that there is no longer benefit to permitting only one house per lot); *Murphy* v. *Kelly*, Superior Court, judicial district of Tolland, Docket No. CV-02-0077886-S, 2002 WL 31600858, *4 (November 7, 2002) (33 Conn. L. Rptr. 424) (injunction requiring removal of vinyl siding on new construction under claim that substantial change in quality of such siding in subdivision where vinyl siding restriction defined in deed).

[23] The defendants claim that the court improperly applied the *Fidelity Title & Trust Co.* test to Briar Brae. The restrictive covenant at issue in *Fidelity Title & Trust Co.* v. *Lomas & Nettleton Co.*, supra, 125 Conn. 373, concerned, among other things, the cost of any house initially built on a lot facing a particular street. Id., 374. The properties were conveyed prior to the Great Depression and subsequent economic events made enforcement of the restrictive covenant problematic. Id., 374–75. The complaint sought a declaratory judgment decreeing a modification of the building restrictions. Id., 375. Certain of the defendants demurred to the complaint on the ground that the changes in economic conditions and in building costs and other attendant circumstances were not so permanent as to justify a modification in the restrictive covenant. Id., 376. Out of *Fidelity Title & Trust Co.* came the significant change in circumstances test identified by the court in the present matter.

"Most of the cases in which general relief from restrictive covenants has been obtained involve situations where, since the time when restrictions were established, there has been such a radical and permanent change in use or occupancy of premises in the neighborhood—as from residential to business purposes—as to defeat the objects sought to be achieved by the restriction." Id., 377. The trial court found that the test had been satisfied if Briar Brae was the intended beneficiary of the restriction because the very land it was intended to benefit—farmland—has itself been subdivided

into numerous suburban lots that are each free of any such restriction. Moreover, the deed to the Martins' lot has a similar restriction and has been in violation of the restriction for years. The court found that the houses on the various lots, by their very nature, were permanent. The changes were found to be substantial and permanent and, therefore, frustrated the purpose of the restriction.

APPENDIX



MAP SHOWING LAND OF MARY ALICE VAUGHAN

APPENDIX



MAP SHOWING PROPERTIES OF MARY ALICE VAUGHAN
and CLYDE E. VAUGHAN